1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   VP RACING FUELS, INC,              No. 2:09-cv-02067-MCE-GGH
     a Texas corporation,
12
             Plaintiff,
13
         v.                             MEMORANDUM AND ORDER
14
     GENERAL PETROLEUM CORPORATION,
15   a California corporation, and
     DOES 1 through 100, inclusive,
16
             Defendants.
17

18                          ----oo0oo----

19       Plaintiff VP Racing Fuels ("Plaintiff") seeks injunctive and

20   monetary relief from Defendant General Petroleum Corporation

21   ("Defendant") for False Advertising in violation of both the

22   Lanham Act, 15 U.S.C. § 1125(a) and California Business and

23   Professions Code §§ 17500 et seq., and for Unfair Competition in

24   violation of California Business and Professions Code §§ 17200 et

25   seq.  Plaintiff's claims against Defendant stem from alleged

26   misrepresentations of the octane rating of racing fuel

27   distributed throughout California by Defendant.

28   ///

                                   1

1    Presently before the Court is Defendant's Motion to Dismiss

2  for failure to state a claim upon which relief can be granted,

3  pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that

4  Plaintiff's Claims are preempted by the Petroleum Marketing

5  Practices Act, 15 U.S.C. §§ 2801-2841, or, in the alternative,

6  for failure to plead fraud with particularity under Fed. R. Civ.

7  P. 9(b).  For the reasons set forth below, Defendant's Motion to

8  Dismiss is granted in part and denied in part.[1]

9                            **BACKGROUND**

10    Plaintiff, a Texas corporation authorized to do business in

11  California, sells racing fuels in California, including street

12  legal 100 Octane fuel.  Defendant, a California corporation with

13  its principal place of business in California, distributes racing

14  fuel in California under the Sunoco brand, including Sunoco's 100

15  Octane product, known as 260 GT™.  Plaintiff contends that

16  Defendant "sold or caused to be sold 97 Octane fuel that has been

17  represented and marketed to consumers to be 100 Octane."  (Compl.

18  ¶ 13.)

19    Plaintiff alleges that in June 2009, it collected samples of

20  allegedly 100 Octane fuel from ten fueling stations in California

21  ("Subject Locations").  Plaintiff alleges that Defendant is the

22  distributor responsible for the 100 Octane fuel offered for sale

23  at the Subject Locations.

24  ///

25  ///

26

27        [1] Because oral argument would not be of material assistance,
    the Court ordered this matter submitted on the briefs.  E.D. Cal.
28  Local Rule 78-230(h).

1  Plaintiff avers that laboratory testing and analysis showed that

2  "[n]one of the evidentiary samples tested from the Subject

3  Locations were validated as 100 Octane.  The evidentiary samples

4  taken at the Subject Locations, despite being portrayed and sold

5  as '100 Octane' tested at 97 Octane or below."  (Compl. ¶ 12.)

6       Plaintiff alleges that Defendant, willfully and

7  intentionally, misrepresented the nature, characteristics and

8  qualities of Defendant's product in its labeling, marketing and

9  product displays.  Plaintiff further claims that Defendant

10  "caused these literally false statements to enter interstate

11  commerce and such statements have actually and materially

12  deceived a substantial number of consumers, and have a continuing

13  tendency to further deceive consumers."  (Compl. ¶ 18.)

14  Plaintiff also alleges that as a direct competitor of Defendant,

15  Plaintiff "has been harmed by consumer reliance upon such

16  misrepresentations, which has enabled Defendants to price their

17  100 Octane produce below the true market value of bona fide, 100

18  Octane fuel ... [and] has resulted in competitive harm and has

19  unfairly diverted sales to Defendants."  (Compl. ¶ 31.)

20       Plaintiff filed the present action on July 27, 2009,

21  alleging federal and state law claims for false advertising and a

22  state law unfair competition claim.  Defendant now moves to

23  dismiss all of Plaintiff's claims for failure to state a claim,

24  on the grounds that such claims are preempted by federal law, or

25  in the alternative, for failure to plead fraud with

26  particularity.

27  ///

28  ///

3

1                              **STANDARD**

2        On a motion to dismiss for failure to state a claim under

3   Rule 12(b)(6), all allegations of material fact must be accepted

4   as true and construed in the light most favorable to the

5   nonmoving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336,

6   337-38 (9th Cir. 1996).  A complaint will not be dismissed for

7   failure to state a claim "'unless it appears beyond doubt that

8   plaintiff can prove no set of facts in support of her claim that

9   would entitle her to relief.'"  <u>Yamaguchi v. Dep't of the Air</u>

10  <u>Force</u>, 109 F.3d 1475, 1480 (9th Cir. 1997) (quoting <u>Lewis v. Tel.</u>

11  <u>Employees Credit Union</u>, 87 F.3d 1537, 1545 (9th Cir. 1996).

12       Federal Rule of Civil Procedure 8(a)(2) requires only "a

13  short and plain statement of the claim showing that the pleader

14  is entitled to relief," in order to "give the defendant fair

15  notice of what the . . . claim is and the grounds upon which it

16  rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.

17  Ed. 2d 80 (1957).  One exception to this general policy of

18  liberality in pleading is fraud or mistake, which instead

19  requires a heightened standard.  In alleging fraud or mistake, "a

20  party must state with particularity the circumstances

21  constituting fraud or mistake."  Fed. R. Civ. P. 9(b) (emphasis

22  added); <u>Desaigoudar v. Meyercord</u>, 223 F.3d 1020, 1022-23 (9th

23  Cir. 2000) (Fraud must be pled "with a high degree of

24  meticulousness.").

25  ///

26  ///

27  ///

28  ///

1    If the court grants a motion to dismiss a complaint, it must

2  then decide whether to grant leave to amend.  The court should

3  "freely give" leave to amend when there is no "undue delay, bad

4  faith[,] dilatory motive on the part of the movant...undue

5  prejudice to the opposing party by virtue of...the amendment,

6  [or] futility of the amendment...."  Fed. R. Civ. P. 15(a); Foman

7  v. Davis, 371 U.S. 178, 182 (1962).  Generally, leave to amend is

8  only denied when it is clear that the deficiencies of the

9  complaint cannot be cured by amendment.  DeSoto v. Yellow Freight

10  Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

**ANALYSIS**

12    **A.    Preemption**

13    Defendant contends that Title II of the Petroleum Marketing

14  Practices Act ("PMPA"), 15 U.S.C. §§ 2821-2824, preempts both the

15  state and federal law claims presented by Plaintiff.  Defendant

16  further argues that in the absence of express preemption,

17  conflict and/or obstacle preemption bars those claims.  Defendant

18  claims that because the PMPA does not contain a private right of

19  action but rather allegedly gives the Federal Trade Commission

20  exclusive authority to enforce its provisions, Plaintiff cannot

21  rely on the general statutes proscribing unfair business

22  practices to state a private claim not permitted by the PMPA.

23    The Court will first set forth the principles of preemption

24  before applying such principles to the facts of this case.

25  ///

26  ///

27  ///

28  ///

1          **1.   General Preemption Principles**

2          Under the Supremacy Clause in the Constitution, state laws

3    that conflict with federal law are without effect.  <u>Altria Group,

4    Inc. v. Good</u>, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008)

5    ("Article VI, cl. 2, of the Constitution provides that the laws

6    of the United States 'shall be the supreme Law of the Land; ...

7    any Thing in the Constitution of Laws of any state to the

8    Contrary notwithstanding.'").  The Federal Government, acting

9    within the authority it possesses under the Constitution, is

10   empowered to preempt state laws to the extent it is believed that

11   such an action is necessary to achieve its purposes.  <u>See</u> <u>New

12   York v. FCC</u>, 486 U.S. 57, 63-64, 108 S. Ct. 1637, 100 L. Ed. 2d

13   48 (1988).

14         Congress may indicate preemptive intent through a statute's

15   express language or through its structure and purpose.  <u>Altria</u>,

16   129 S. Ct. at 543.  However, the presence of an express

17   preemption clause does not immediately end the inquiry; "the

18   question of the substance and scope of Congress' displacement of

19   state law remains."  <u>Id.</u>  Preemption may also be inferred if the

20   scope of the statute indicates that Congress intended federal law

21   to occupy the legislative field, or if there is an actual

22   conflict between state and federal law.  <u>Id.</u> (citation omitted).

23   Irrespective of the variety of preemption at issue, the Court is

24   guided by the rule that "'[t]he purpose of Congress is the

25   ultimate touchstone' in every pre-emption case."

26   ///

27   ///

28   ///

1  Id. (citations omitted); City of Auburn v. United States, 154

2  F.3d 1025, 1031 (9th Cir. 1998) ("[T]he pivotal question is not

3  the nature of the state regulation, but the language and

4  congressional intent of the specific federal statute." (citations

5  omitted)).

6      Because the States are independent sovereigns in our federal

7  system, the federal courts have long presumed that Congress does

8  not cavalierly preempt state-law causes of action.  Bates v. Dow

9  Agrosciences LLC, 544 U.S. 431, 449, 125 S. Ct. 1788, 161 L. Ed.

10 2d 687 (2005) (citations and quotations omitted); Altria, 129 S.

11 Ct. at 543 ("When addressing questions of express or implied pre-

12 emption, we begin our analysis 'with the assumption that the

13 historic police powers of the States [are] not to be superseded

14 by the Federal Act unless that was the clear and manifest purpose

15 of Congress.'" (citation omitted)).  This assumption applies with

16 particular force when Congress has legislated in a field

17 traditionally occupied by the States.  Altria, 129 S. Ct. at 543.

18 Therefore, when the text of a preemption clause is susceptible to

19 more than one plausible reading, courts ordinarily "accept the

20 reading that disfavors pre-emption."  Bates, 544 U.S. at 449.

21     The Court begins by first noting that the States have

22 traditionally occupied the area of regulating petroleum products.

23 In California, the laws relating to petroleum products were first

24 enacted in 1931 and are found in the California Business and

25 Professions Code, Division 5, Chapters 14 and 15.  Regulations

26 that further define and implement the laws are found in the

27 California Code of Regulations, Title 4, Division 9, Chapters 6,

28 7, and 8.

1  Therefore, there is a strong presumption that state law claims

2  are not to be superseded unless that was the clear and manifest

3  purpose of Congress.

4       The Court will now examine the language and congressional

5  intent, including the legislative history, of the PMPA before

6  turning to whether the PMPA preempts Plaintiff's claims.

7              **2.  Petroleum Marketing Practices Act**

8       In June 1978, Congress enacted the Petroleum Marketing

9  Practices Act ("PMPA"),[2] title II of which regulates the testing

10 and disclosure of the octane rating of gasoline, as well as the

11 determination, certification, and display of octane ratings.[3]

12 Under the PMPA, every gasoline refiner who distributes fuel in

13 commerce must determine the octane rating of such gasoline, in

14 accordance with FTC guidelines, and certify this rating to any

15 entity to whom the gasoline is distributed.  15 U.S.C. § 2822(a)

16 (2008).  Then, each entity in the distribution chain must certify

17 the octane rating to the next recipient, based either on its own

18 determination or on the certification it received from its

19 distributor.  15 U.S.C. § 2822(b).

20 ///

21

22      [2] The PMPA was enacted on June 19, 1978.  Only Title II of
   the PMPA is germane to this case; all references to the PMPA
23 pertain only to Title II, unless otherwise noted, which is
   codified at 15 U.S.C. §§ 2821-2824.
24

25      [3] The stated purpose of the PMPA is "to require the testing,
   certification and posting of the octane rating of gasoline sold
26 at retail and the display on any new automobile of the proper
   octane rating for that automobile."  S. Rep. No. 95-731, at 1
27 ("[T]he Act ... [is] to encourage conservation of automotive
   gasoline and competition in the marketing of such gasoline by
28 requiring that information regarding the octane rating of
   automotive gasoline be disclosed to consumers ....").

1    And finally, each gasoline retailer must then display, in a clear

2    and conspicuous manner, at the point of sale to the ultimate

3    purchaser, the octane rating of the gasoline, based either on its

4    own determination or on that certified to it by the distributor.

5    15 U.S.C. § 2822(c).

6        As initially codified, Section 204 of the PMPA set forth a

7    broad express preemption clause:

>        To the extent that any provision of this
8        subchapter applies to any act or omission, no State or
9        any political subdivision thereof may adopt, *enforce*,
         or continue in effect any provision of any law or
10       regulation (including any remedy or penalty applicable
         to any violation thereof) with respect to such act or
11       omission, unless such provision of such law or
         regulation is the same as the applicable provision of
12       this subchapter.

13   15 U.S.C. § 2824 (1988), <u>amended by</u> 15 U.S.C. § 2824 (1992)

14   (emphasis added).  Thus, state law dealing with any act or

15   omission to which the provisions of the title also apply was

16   preempted unless the provision of state law was "the same as" the

17   applicable provision of the title.  S. Rep. No. 95-731, at 45

18   (1978), <u>as reprinted in</u> 1978 U.S.C.C.A.N. 873, 903.  Furthermore,

19   Section 203 delegates to the Federal Trade Commission ("FTC") the

20   procedural, investigative, and enforcement powers and does not

21   provide for a private right of action, unlike Title I of the

22   PMPA.[4]  15 U.S.C. § 2823.  Therefore, the PMPA preempted most

23   state law and precluded enforcement action by the state.

24   ///

25   ///

26   _____

27       [4] Title I of the PMPA provides: "If a franchisor fails to
     comply with the requirements of section 2802, 2803, or 2807 of
     this title, the franchisee may maintain a civil action against
28   such franchisor."  15 U.S.C. § 2805.

1    In 1992, Congress amended the PMPA.  As amended, the current

2    preemption clause reads:

> (a) To the extent that any provision of this subchapter
> applies to any act or omission, no State or any
> political subdivision thereof may adopt or continue in
> effect, *except as provided in subsection (b) of this
> section*, any provision of law or regulation with
> respect to such act or omission, unless such provision
> of such law or regulation is the same as the applicable
> provision of this subchapter.
> (b) A State or political subdivision thereof may
> provide for any investigative or enforcement action,
> remedy, or penalty (including procedural actions
> necessary to carry out such investigative or
> enforcement actions, remedies or penalties) with
> respect to any provision of law or regulation permitted
> by subsection (a) of this section.

11   15 U.S.C. § 2824 (2008) (as amended by H.R. 776, 102d Cong.

12   (1992)) (emphasis added).

13   Congress' intent in amending the PMPA was to provide "the

14   states more authority to enforce octane posting requirements."

15   H.R. Rep. No. 102-474(I), at 151 (1992), as reprinted in 1992

16   U.S.C.C.A.N. 1954, 1974.  H.R. 776 was introduced after a two-

17   year investigation by the General Accounting Office (GAO)

18   estimated that "nine percent of a nationwide sample of gasoline

19   sold in 1988 was mislabeled by at least half an octane point, the

20   amount considered a significant violation."  Id.  Further,

21   Congress found that although vested with the authority, the

22   Federal government had failed to test or enforce gasoline octane

23   compliance since 1981.  Id.  Congress recognized that "states'

24   attempts to prosecute octane labeling violations are hampered

25   because the Petroleum Marketing Practices Act (PMPA) preempts

26   many effective state enforcement procedures."  Id.

27   ///

28   ///

10

1    Ultimately, H.R. 776 "allow[ed] states broader authority to
2    enforce octane mislabeling and posting on their own ...." _Id._
3    ("In short, this legislation ... recognizes that motorists have a
4    right to know that they are getting what they pay for, and that
5    dealers have a right to know that their competitors are not
6    cheating.  The Federal government has not enforced the law; the
7    legislation gets them out of the way and allows the states to do
8    the job.").  Congress further explained, "[u]nder this section,
9    certain existing restrictions in the PMPA on state enforcement
10   would be repealed.  States would be allowed broader authority to
11   enforce octane mislabeling and posting.  States could provide for
12   any investigative or enforcement act necessary to enforce octane
13   posting requirements under [the PMPA]." _Id._ at 220.

14       Therefore, currently under the PMPA, for any act or omission
15   covered by the PMPA, so long as the state law is not different
16   from or in addition to the requirements under the PMPA, the state
17   law can be used to enforce the PMPA and is not preempted by such.

18       The Court now turns to Plaintiff's state law claims to
19   assess whether or not they are "the same as" PMPA's requirements.

20                    **3.   Unfair Competition Claim**

21       Plaintiff's Second Claim is for violation of California's
22   Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200
23   et seq.  This statutory scheme prohibits any "unlawful, unfair or
24   fraudulent business act or practice and unfair, deceptive, untrue
25   or misleading advertising and any act prohibited by [Cal. Bus. &
26   Prof. Code §§ 17500 et seq.]."  Cal. Bus. & Prof. Code § 17200.
27   ///
28   ///

                                   11

"By proscribing 'any unlawful' business practices, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 180 (1999) (internal quotations and citations omitted).  The "unlawful" prong of the UCL, thus, effectively turns a violation of the underlying law into a per se violation of the UCL.  See Kasky v. Nike, Inc., 27 Cal.4th 939, 950 (2002); Cel-Tech Communications, 20 Cal.4th at 180.

Plaintiff alleges that Defendant is "competing unfairly by knowingly selling fuel that is misrepresented to consumers as 100 Octane when it is not." (Compl. ¶ 23.)  Defendant argues that Plaintiff's claim must fail because the PMPA does not provide for a private right of action for its violation but rather gives the FTC the enforcement authority, and thus the courts have no authority to enforce any violations of the PMPA.  Defendant further argues that "*any state law version of the PMPA can only be enforced by the state or by state agencies*." (Def.'s Mtn 6.)

First, Plaintiff is not attempting to bring an action under the PMPA; therefore, the fact that the PMPA does not provide a private right of action is not determinative. Furthermore, Defendant's interpretation of the preemption clause is too narrow and would have this Court ignore the 1992 amendment to the PMPA's express preemption clause.  The statute currently provides that "[a] State or political subdivision thereof may provide for *any* investigative or enforcement action, remedy, or penalty ... permitted ...."  15 U.S.C. § 2824(b) (emphasis added).

The legislative history set forth above makes it clear that
Congress amended Title II of the PMPA to allow States the
authority to enforce octane disclosure requirements.

Here, the State of California has provided that any unlawful
business practices, including violations of laws for which there
is no direct private right of action, may be redressed by private
action under the UCL; it is not necessary that the predicate law
provide for private civil enforcement. See Summit Technology,
Inv. v. High-Line Medical Instruments, Co., 933 F.Supp. 918 (C.D.
Cal. 1996)   Furthermore, Defendant has not indicated any
authority for the proposition that the courts are not a political
subdivision of the State.

Defendant further argues that the state law UCL cause of
action is not "the same as" the applicable provision of the PMPA,
and thus are expressly preempted by such.    In Jurman v. Sun
Co., 248 A.D.2d 246, 671 N.Y.S.2d 218 (N.Y. App. Div. 1998) the
Supreme Court, Appellate Division of New York held that
plaintiffs' claims were "preempted by the Petroleum Marketing
Practices Act, Octane Disclosure in that the preemption clause
bans any State 'provision of any law or regulation' that is not
the same as the Federal provisions." Id. (internal citations
omitted).  The Court further explained: "Were we not to find
express preemption, we would find implied preemption, in that
State standards setting stricter requirements for the posting of
information regarding octane level 'would unavoidably result in
serious interference with the "accomplishment and execution of
the full purposes and objectives of Congress."'" Id. (citation
omitted).

13

1    Here, we are not dealing with an attempt to set stricter
2  standards.  Instead, the pertinent issue in this case is whether
3  to allow the State to enforce the Federal standard.  Because the
4  UCL "adopts" the underlying law for purposes of the action, then
5  the predicate law here, PMPA, would be "the same as" the PMPA.[5]
6  Plaintiff alleges that Defendant is "competing unfairly by
7  knowingly selling fuel that is misrepresented to consumers as 100
8  Octane when it is not."  (Compl. ¶ 23.)  Plaintiff appears to
9  claim then that Defendant knowingly mis-certified the octane
10  rating of the gasoline it distributed to Sunoco retailers.  This
11  presumably could have occurred for any number of reasons,
12  including an intentional violation of the PMPA, or simply because
13  the octane rating certified to Defendant by its refiner was
14  inaccurate.

15    Defendant also argues that, in the absence of express
16  preemption, Plaintiff's UCL claim should be impliedly preempted.
17  However, there is no conflict in complying with both the PMPA and
18  the UCL; compliance with the PMPA would mean that there is no
19  violation of underlying law.  Furthermore, it is evident that
20  Congress did not intend to regulate the entire field as it
21  amended Section 204 of the PMPA to allow states to provide for
22  any enforcement action for violations.
23  ///

24

25    [5] Furthermore, violations of the legislative requirements
26  were enforceable by the FTC as unfair or deceptive trade
   practices under Section 5 of the Federal Trade Commission Act, 15
27  U.S.C. § 2823(e).  Section 5 states: "[u]nfair methods of
   competition in or affecting commerce, and unfair or deceptive
   acts or practices in or affecting commerce, are hereby declared
28  unlawful."  15 U.S.C. § 45.

1    Accordingly, the Court finds that Plaintiff's Second Claim

2  for Unfair Competition, pursuant to Cal. Bus. & Prof. Code §

3  17200, is not preempted by Title II of the PMPA.

4                    **4.   False Advertising Claim**

5    Plaintiff's Third Claim is for False Advertising under

6  California Business and Professions Code §§ 17500 <u>et seq</u>.

7  ("FAL").  Section 17500 provides:

8         It is unlawful for any ... corporation ... to make or
          disseminate or cause to be made or disseminated before
9         the public in this state, ... in any newspaper or other
          publication, or any advertising device, or by public
10        outcry or proclamation, or in any other manner or means
          whatever, including over the Internet, any statement,
11        ... which is untrue or misleading, *and which is known,
          or which by the exercise of reasonable care should be
12        known, to be untrue or misleading* ....

13  Cal. Bus. & Prof. Code § 17500 (emphasis added).

14    Defendant again argues that the provisions of section 17500

15  are not "the same as" the PMPA and thus Plaintiff's claim must

16  fail.  However, it is not *the act* of certifying or displaying the

17  octane level that Plaintiff complains about.  Rather, it is the

18  act of *intentionally* misrepresenting the octane level that

19  Plaintiff takes issue.  Plaintiff alleges that Defendant is

20  "making or condoning the posting of signage, placards, displays,

21  and other public outcries or proclamations that misrepresented

22  the true octane level of the products they sold and/or caused to

23  be sold to the public."  (Compl. ¶ 28.)  A false or misleading

24  advertisement is unlawful only if the advertiser knows, or in the

25  exercise of reasonable care should know, of its false or

26  misleading character.

27  ///

28  ///

                                    15

1    Defendant argues that under the PMPA, a distributor, such as

2    Defendant, need not know the actual octane of the fuel it

3    distributes and may, instead, rely on the refiner's stated octane

4    level.  Here, however, Plaintiff is alleging that Defendant did

5    *not have knowledge* of the actual octane rating.  Here, the "act"

6    complained of is the misleading/false advertising, not the

7    certification or display of the octane rating.  The PMPA does not

8    regulate *the act* of advertising petroleum products.  Therefore,

9    the PMPA does not expressly preempt Plaintiff's false advertising

10   claim because the express preemption clause only pertains "[t]o

11   the extent that any provision of this subchapter applies to any

12   act or omission."  15 U.S.C. § 2824.

13       Furthermore, Plaintiff's state law false advertising claim

14   is not impliedly preempted, either through conflict or

15   obstruction.  As Congress noted, "This rule of construction is

16   not, however, intended to authorize intentionally deceptive or

17   misleading identification of automotive gasoline.  Such would be

18   the case if the trademark to be utilized were '100 Octane' and

19   this trademark were to be utilized to identify automotive

20   gasoline with an octane rating of less than 100 under the

21   statutory definition."  S. Rep. No. 95-731, at 30.  Therefore,

22   Congress did not intend for the PMPA to regulate the entire field

23   of petroleum marketing.

24       The Court in Alvarez v. Chevron Corp., No. CV 09-3343-GHK

25   (CWX), 2009 U.S. Dist. LEXIS 94377 (C.D. Cal. Sept. 30, 2009),

26   recently held that the PMPA did preempt the plaintiffs'

27   California false advertising claim.

28   ///

16

The Court also dismissed the plaintiffs' California unfair
competition claim, but not on the grounds of preemption.
However, Plaintiff's claim here is factually distinguishable from
that in <u>Alvarez</u>.  In <u>Alvarez</u>, the plaintiff claimed "[d]efendants
misled consumers by making untrue statements and failing to
disclose .... [that] the initial 0.2 -0.3 gallons of such motor
fuel sold had a lower octane rating due to the residual fuel
remaining in the fuel dispensing system from a prior customer who
had purchased a lower grade of motor fuel." <u>Alvarez</u>, 2009 U.S.
Dist. LEXIS 94377 at *13.  The <u>Alvarez</u> court found that
plaintiff's false advertising claim was preempted because "we
cannot require Defendants to disclose more information than is
expressly required by these provisions." <u>Id.</u> at *15.  Here,
however, Plaintiff is not requesting that Defendant disclose more
information than required, only that Defendant's disclosure be
accurate and truthful.

Accordingly, Plaintiff's Third Claim for False Advertising,
pursuant to Cal. Bus. & Prof. Code § 17500, is not preempted by
Title II of the PMPA.

The Court will now turn to Plaintiff's federal Lanham Act
Claim to determine whether the PMPA preempts that claim.

### 5.    Lanham Act Claim

Plaintiff's First Claim is for false advertising in
violation of Section 43(a) of the Lanham Act, 15 U.S.C. §
1125(a)(1)(B).

///

///

///

Section 43(a) prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services.[6]  Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1106.

When two federal statutes conflict, federal statutory construction requires that specific statutory frameworks take precedence over more general prohibitions.  Accord In re Padilla, 222 F.3d 1184, 1192 (9th Cir. 2000) ("Where both a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first.").  It is also well established that, whenever possible, a court should interpret two seemingly inconsistent statutes to avoid a potential conflict.  California ex rel. Sacramento Metropolitan Air Quality Management Dist. v. United States, 215 F.3d 1005, 1012 (9th Cir. 2000) ("The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." (citation omitted)).

///

---

[6] 15 U.S.C. § 1125(a): Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

For the following reasons, the Court finds that the Lanham Act Section 43(a) and title II of the PMPA are not capable of co-existence and thus the more specific provisions of the PMPA must prevail.

In order to state a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must plead: (1) in commercial advertisements, defendant made false statements of fact about its own or another's product; (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; (3) such deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its misrepresentation to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as a result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public. Rice v. Fox Broadcasting Co., 330 F.3d 1170 (9th Cir. 2003). To demonstrate falsity within the meaning of the Lanham Act, a plaintiff must show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).

The specific provisions of the PMPA allow the distributor to rely on the certification it received from the supplier. 15 U.S.C. § 2822.

///

///

///

1   Because knowledge of falsity is not a prerequisite to a finding

2   of a violation under Section 43(a) of the Lanham Act, a defendant

3   could be in complete compliance with the PMPA, by relying on its

4   refiner's certification of the octane rating, and still be in

5   violation of Section 43(a).  A defendant who has relied on an

6   inaccurate certification would necessarily be in violation of

7   Section 43(a) for any advertisements it makes in accordance with

8   such certification because the statements would be literally

9   false.  In other words, a defendant could unknowingly make false

10  advertisements in accordance with the PMPA certification chain

11  and unwittingly violate Section 43(a).  However, a person cannot

12  be held liable for "performing a duty which the law at that time

13  required him to perform."  Accord Hoffman v. Halden, 268 F.2d

14  280, 300 (9th Cir. 1959) (reversed on unrelated grounds).

15  Allowing a Section 43(a) claim would nullify the safe harbor

16  provision of the PMPA.  See California ex rel. Sacramento

17  Metropolitan Air Quality Management Dist., 215 F.3d at 1013 ("It

18  is fundamental that a general statutory provision may not be used

19  to nullify or to trump a specific provision, irrespective of the

20  priority of enactment.").

21      Accordingly, Plaintiff's Section 43(a) Lanham Act Claim is

22  preempted by the PMPA and as such is dismissed with prejudice.[7]

23  ///

24  ///

25

26  [7] The Court notes that Plaintiff's Complaint asserts federal
    jurisdiction based on federal question, 28 U.S.C. § 1331, and
    diversity jurisdiction, 28 U.S.C. § 1332(a)(1).  Therefore, while
27  there is no longer a federal question, the Court retains
    jurisdiction over this matter pursuant to diversity jurisdiction.
28

1    The Court now turns to Defendant's argument that even if

2    Plaintiff's state law claims are not preempted by the PMPA, such

3    claims should nevertheless be dismissed for failure to allege the

4    deceptive practices at issue with sufficient particularity.

5    **B.    Pleading Fraud with Particularity**

6    Defendant argues that all of Plaintiff's claims essentially

7    sound in fraud and thus must be plead with particularity under

8    Federal Rule of Civil Procedure 9(b) to survive a motion to

9    dismiss.  Defendant's main contention is that Plaintiff's

10   allegations do not identify any misrepresentation made by

11   Defendant, much less any basis for inferring that Defendant

12   knowingly made such misrepresentations.  Defendant further argues

13   that the time, place, content and parties to any supposed

14   misrepresentation are not alleged by Plaintiff.  Plaintiff

15   asserts that its claims are not based in fraud, but even if they

16   are, sufficient facts have been alleged to survive the heightened

17   pleading standard.

18   The California Supreme Court has held "[t]he requirement

19   that fraud be pleaded with specificity ... does not apply to

20   causes of action under the consumer protection statutes,"

21   specifically referring to Sections 17200 and 17500.  <u>Committee on</u>

22   <u>Children's Television, Inc. v. General Foods Corp.</u>, 35 Cal.3d

23   197, 212 n.11, <u>superseded on other grounds by statute in</u> <u>Gartin</u>

24   <u>v. S&M NuTec LLC</u>, 245 F.R.D. 429 (C.D. Cal. 2007).  However, the

25   Ninth Circuit recently addressed the subject:

26   ///

27   ///

28   ///

21

1    Kearns's first argument – that Rule 9(b) does not
2    apply to California's consumer protection statutes
     because California courts have not applied rule 9(b) to
     the Consumer Protection Statutes, which include the
3    CLRA and UCL – is unavailing.  It is well-settled that
     the Federal Rules of Civil Procedure apply in federal
4    court, "irrespective of the source of the subject
     matter jurisdiction, and irrespective of whether the
5    substantive law at issue is state or federal." Vess
     [v. Ciba-Geigy Corp. USA], 317 F.3d [1097,] at 1103
6    .... The UCL prohibits "unlawful, unfair or fraudulent
     business act[s] or practice[s]" and "unfair, deceptive,
7    untrue or misleading advertising."  Cal. Bus. & Prof.
     Code § 17200.  Rule 9(b)'s particularity requirement
8    applies to these state-law causes of action.  Vess, 317
     F.3d at 1102-05....
9
     While fraud is not a necessary element of a claim
10   under ... UCL, a plaintiff may nonetheless allege that
     the defendant engaged in fraudulent conduct.  Id. at
11   1103.  A plaintiff may allege a unified course of
     fraudulent conduct and rely entirely on that course of
12   conduct as the basis of that claim.  In that event, the
     claim is said to be 'grounded in fraud' or to 'sound in
13   fraud,' and the pleading ... as a whole must satisfy
     the particularity requirement of Rule 9(b).  Id. at
14   1103-04.

15   Kearns v. Ford Motor Corp., 567 F.3d 1120, 1125 (9th Cir. 2009).

16   Reviewing the Complaint, Plaintiff alleges that Defendant

17   engaged in a fraudulent course of conduct (i.e., knowingly

18   misrepresenting the Octane level of the gasoline that it

19   distributed) and such conduct resulted in violations of the UCL

20   and FAL.  Under the heading "FACTUAL ALLEGATIONS COMMON TO ALL

21   CLAIMS," Plaintiff alleges that Defendant "has thus *defrauded* an

22   unknown number of consumers whom have paid for what they believed

23   to be 100 Octane racing fuel, when in fact what they received was

24   97 Octane or less."  (Compl. ¶ 13 (emphasis added).)

25   Plaintiff further alleges under the same heading that Defendant

26   "has *defrauded* consumers in the manner alleged ...."  (Compl. ¶

27   14 (emphasis added).)

28   ///

22

1  These allegations are specifically incorporated by reference in

2  Plaintiff's state law claims under the UCL and FAL.  (Compl. ¶¶

3  22, 26.)   Furthermore, Plaintiff specifically alleges under its

4  Second Claim (UCL) that "[D]efendants are competing unfairly by

5  *knowingly* selling fuel that is *misrepresented* to consumers as 100

6  Octane when it is not."  (Compl. ¶ 23 (emphasis added.)

7  Likewise, Plaintiff's Third Claim (FAL) alleges that Defendant

8  "knew, or by the exercise of reasonable care should have known,

9  that the statements were untrue or misleading."  (Compl. ¶ 28.)

10 Therefore, the Court finds that Plaintiff's state law claims are

11 "grounded in fraud" and thus must be pleaded with particularity.

12     The Court now turns to Plaintiff's state law claims to

13 determine whether Plaintiff has satisfied this heightened

14 pleading standard.

15             **1.   Unfair Competition Claim**

16     California's Business and Professions Code § 17200 ("UCL")

17 defines unfair competition as "unlawful, unfair or fraudulent

18 business act or practice and unfair, deceptive, untrue or

19 misleading advertising and any act prohibited by [Cal. Bus. &

20 Prof. Code §§ 17500 et seq.]."  Therefore, in order to state a

21 cause of action for unfair competition under the UCL, a plaintiff

22 must allege either: (1) an unlawful act; (2) an unfair act; (3) a

23 fraudulent act; or (4) false advertising.

24     Plaintiff alleges that Defendant's practices constitute

25 unfair competition because "(1) they are unlawful, unfair or

26 fraudulent, and (2) they involve unfair, deceptive, untrue or

27 misleading advertising ...."  (Compl. ¶ 24.)

28 ///

23

Thus, it appears that Plaintiff is attempting to state a cause of action under each prong.  Therefore, the Court will examine each of these in turn, except false advertising, which the Court will discuss separately in Section 2 below.

### a.  Unlawful Act

"Unlawful" practices are practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulation, or court-made." <u>Saunders v. Superior Court</u>, 27 Cal. App. 4th 832, 838-39 (1994) (citing <u>People v. McKale</u>, 25 Cal.3d 626, 632 (1979)).  To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. <u>McKale</u>, 25 Cal.3d at 635.

As noted above, Plaintiff's Lanham Act claim is preempted and thus the Lanham Act cannot be the predicate law for Plaintiff's UCL claim.  Furthermore, as explained below, Plaintiff's state law false advertising claim fails as well.  As Plaintiff has not identified any other predicate law in its complaint whereby Defendant's actions may be found "unlawful," Plaintiff has failed to state a cause of action under the "unlawful" prong of the UCL.

### b.  Unfair Act

A business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to a violation of the law, or that otherwise significantly threatens or harms competition."

///

24

1  <u>Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.</u>, 20

2  Cal.4th 163, 187 (1999).  To sufficiently plead an action based

3  on an "unfair" business act or practice, a plaintiff must allege

4  facts showing the "unfair" nature of the conduct and that the

5  harm caused by the conduct outweighs any benefits that the

6  conduct may have.  <u>Motors, Inc. v. Times Mirror Co.</u>, 102 Cal.

7  App. 3d 735, 740 (1980) ("[S]ince the complaint is unlikely to

8  reveal defendant's justification, if th[e] pleading states a

9  prima facie case of harm, ... the defendant should be made to

10  present its side of the story.").

11      Plaintiff alleges that Defendant's conduct "has enabled

12  Defendants to price their 100 Octane product below the true

13  market value of bona fide, 100 Octane fuel."  (Compl. ¶ 31.)

14  Plaintiff further alleges that such practice "has resulted in

15  competitive harm and has unfairly diverted sales to Defendant[]."

16  (<u>Id.</u>)  Therefore, the Court concludes that Plaintiff has

17  sufficiently alleged harm such that Defendant should be made to

18  answer.  As such, Plaintiff properly states a cause of action

19  under the "unfair" prong of the UCL.

20                    **c.  Fraudulent Act**

21      A "fraudulent" business act or practice is one in which

22  members of the public are likely to be deceived.  <u>Hall v. Time,</u>

23  <u>Inc.</u>, 158 Cal. App. 4th 847, 849 (2008); <u>Olsen v. Breeze, Inc.</u>,

24  48 Cal. App. 4th 608, 618 ("'Fraudulent,' as used in the statute,

25  does not refer to the common law tort of fraud but only requires

26  a showing members of the public 'are likely to be deceived.'"

27  (citation omitted)).

28  ///

1  Thus, in order to state a cause of action based on a "fraudulent"

2  business act or practice, the plaintiff must allege that

3  consumers are likely to be deceived by the defendant's conduct.

4  <u>Committee on Children's Television, Inc. v. General Foods Corp.</u>,

5  35 Cal.3d 197, 212 (1983).

6      Plaintiff alleges that Defendant is the distributor of 100

7  Octane fuel at Sunoco retail locations throughout California.

8  (Compl. ¶ 9.)  Plaintiff specifically alleges that in June 2009,

9  Plaintiff procured numerous samples of gasoline from 10 of these

10 retail locations allegedly supplied by Defendant.  (Compl. ¶ 9.)

11 Furthermore, Plaintiff has expressly identified these 10 retail

12 locations, including the store names and locations.  (<u>Id.</u>)

13 Plaintiff further alleges that samples of gasoline portrayed and

14 sold as "100 Octane" taken from the Subject Locations tested as

15 97 Octane or below.  (Compl. ¶ 12.)  Plaintiff asserts "GP has

16 thus defrauded an unknown number of consumers whom have paid for

17 what they believed to be 100 Octane racing fuel, when in fact

18 what they received was 97 Octane or less."  (Compl. ¶ 13.)

19 By reasonable inference, Plaintiff has alleged that Defendant's

20 certification of the fuel rating as 100 Octane at the Subject

21 Locations likely misled consumers into believing that such fuel

22 was in fact 100 Octane, when in actuality, it was not.  The Court

23 finds that Plaintiff's allegations are sufficiently particular to

24 give the Defendant fair notice of what the claim is and the

25 grounds upon which it rests.

26     As such, Plaintiff sufficiently states a cause of action

27 under the "fraudulent" prong of the UCL.

28 ///

1    Accordingly, Plaintiff has stated a cause of action under

2    the "unfair" and "fraudulent" prongs of the UCL, but not under

3    the "unlawful" prong.  Therefore, Plaintiff's Second Claim is

4    dismissed with leave to amend to the extent that such claim is

5    based on the "unlawful" prong of the UCL.

6    The Court now turns to Plaintiff's claims of false

7    advertising under the UCL and California's False Advertising Law.

8                    **2.    False Advertising Claim**

9    California's False Advertising Law (FAL) prohibits the

10   dissemination in *any advertising media* of any "statement"

11   concerning real or personal property offered for sale, "which is

12   untrue or misleading, and which is known, or which by the

13   exercise of reasonable care should be known, to be untrue or

14   misleading."  Cal. Bus. & Prof. Code § 17500.

15   "[T]o state a claim under either the UCL or the false

16   advertising law, based on false advertising or promotional

17   practices, 'it is necessary only to show that "members of the

18   public are likely to be deceived."'" In re Tobacco II Cases, 46

19   Cal.4th 298, 312 (2009) (quoting Kasky v. Nike, Inc., 27 Cal.4th

20   939, 951 (2002)).[8]  Accordingly, a plaintiff must allege: (1)

21   statements in the advertising are untrue or misleading, and (2)

22   defendant knew, or by the exercise of reasonable care should have

23   known, that the statements were untrue or misleading.  People v.

24   Lynam, 253 Cal. App. 2d 959, 965 (1967).

25   ///

26

27      [8] A violation of the UCL's fraud prong is also a violation
     of false advertising law (§ 17500 et seq.).  Committee on
     Children's Television, Inc. v. General Foods Corp., 35 Cal.3d
28   197, 210 (1983).

1    The underlying element of a false advertising claim is some
2  type of advertising statement.  <u>See</u> <u>Tayag</u>, 2009 U.S. Dist. LEXIS
3  33260, at *5-6 ("The content of the alleged misrepresentation is
4  necessary to state a claim, as is an allegation of what is false
5  or misleading about the statement.").  The Complaint is void of
6  any such factual allegation.  The only allegation in the
7  Complaint regarding advertisements is "Sunoco 260 GT 100, which
8  has the highest octane rating of any street legal fuel, is now
9  available at selected retail locations."  (Compl. 3 n.1.)  This
10  statement, however, was made by Sunoco, Inc., not Defendant, as
11  evidenced by the website address. (Compl. 3 n.1
12  ("http://www.sunocoinc.com/Site/Consumer/RaceFuels/260GT100Locati
13  ons/California.htm").)  Plaintiff has not alleged any
14  relationship between Sunoco, Inc. and Defendant whereby Defendant
15  could be held liable for the statement made by Sunoco, Inc.
16    Plaintiff alleges that Defendant, "in its labeling,
17  marketing and product displays, ha[s] misrepresented the nature,
18  characteristics, or qualities of [its] product by falsely
19  informing consumers that they are purchasing 100 Octane fuel,
20  when i[n] fact they are actually purchasing 97 or less Octane."
21  (Compl. ¶ 17.)  Plaintiff further alleges that Defendant is
22  "making or condoning the posting of signage, placards, displays,
23  and other public outcries or proclamations that misrepresent[]
24  the true octane level of the products they sold and/or caused to
25  be sold to the public."  (Compl. ¶ 28.)  No other facts are
26  provided.
27  ///
28  ///

28

1    As such, Plaintiff has not identified any advertisements by

2  Defendant but has merely asserted conclusory allegations that

3  Defendant made false statements in its advertising.  The Court

4  need not accept these conclusory allegations as true.  Plaintiff

5  has not alleged any facts as to the substance or even existence

6  of these labeling, marketing and product displays.  Therefore,

7  the Court finds that Plaintiff has not satisfied heightened the

8  pleading standard.

9    Accordingly, Plaintiff's state law false advertising claim,

10 under both the UCL and the FAL, is dismissed with leave to amend.

11                          **CONCLUSION**

12   Based on the foregoing, Defendant's Motion to Dismiss is

13 GRANTED with prejudice as to Plaintiff's First Claim for

14 violation of Section 43(a) of the Lanham Act, 15 U.S.C. §

15 1125(a)(1)(B).  Defendant's Motion to Dismiss is DENIED as to

16 Plaintiff's Second Claim for unfair competition in violation of

17 Cal. Bus. & Prof. Code § 17200 <u>et seq.</u>, to the extent such claim

18 is based on "unfair" or "fraudulent" practices, but GRANTED,

19 without prejudice, to the extent such claims are based on

20 "unlawful" practices or false advertising.  Defendant's Motion to

21 Dismiss is GRANTED without prejudice as to Plaintiff's Third

22 Claim for false advertising in violation of Cal. Bus. & Prof.

23 Code § 17500.

24 ///

25 ///

26 ///

27 ///

28 ///

1      Plaintiff may file a Second Amended Complaint, should it

2  choose to do so, not later than twenty (20) days following the

3  date this Memorandum and Order is electronically filed.

4      IT IS SO ORDERED.

5
   Dated: November 25, 2009

6

7
                                    _____
8                                   MORRISON C. ENGLAND, JR.
                                    UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28