UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VP RACING FUELS, INC,                    No. 2:09-cv-02067-MCE-GGH
a Texas corporation,

       Plaintiff,

     v.                                    <u>MEMORANDUM AND ORDER</u>

GENERAL PETROLEUM CORPORATION,
a California corporation, and
DOES 1 through 100, inclusive,

       Defendants.

----oo0oo----

    Plaintiff VP Racing Fuels ("Plaintiff") seeks injunctive and monetary relief from Defendant General Petroleum Corporation ("Defendant") for False Advertising in violation of both the Lanham Act, 15 U.S.C. § 1125(a) and California Business and Professions Code §§ 17500 <u>et seq.</u>, and for Unfair Competition in violation of California Business and Professions Code §§ 17200 <u>et seq</u>.  Plaintiff's claims against Defendant stem from alleged misrepresentations of the octane rating of racing fuel distributed throughout California by Defendant.

///

1

1    Presently before the Court is Defendant's Motion to Dismiss

2   for failure to state a claim upon which relief can be granted,

3   pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that

4   Plaintiff's Claims are preempted by the Petroleum Marketing

5   Practices Act, 15 U.S.C. §§ 2801-2841, or, in the alternative,

6   for failure to plead fraud with particularity under Fed. R. Civ.

7   P. 9(b).  For the reasons set forth below, Defendant's Motion to

8   Dismiss is granted in part and denied in part.[1]

9                            **BACKGROUND**

10    Plaintiff, a Texas corporation authorized to do business in

11   California, sells racing fuels in California, including street

12   legal 100 Octane fuel.  Defendant, a California corporation with

13   its principal place of business in California, distributes racing

14   fuel in California under the Sunoco brand, including Sunoco's 100

15   Octane product, known as 260 GT™.  Plaintiff contends that

16   Defendant "sold or caused to be sold 97 Octane fuel that has been

17   represented and marketed to consumers to be 100 Octane."  (Compl.

18   ¶ 13.)

19    Plaintiff alleges that in June 2009, it collected samples of

20   allegedly 100 Octane fuel from ten fueling stations in California

21   ("Subject Locations").  Plaintiff alleges that Defendant is the

22   distributor responsible for the 100 Octane fuel offered for sale

23   at the Subject Locations.

24   ///

25   ///

26

27         [1] Because oral argument would not be of material assistance,
     the Court ordered this matter submitted on the briefs.  E.D. Cal.
28   Local Rule 78-230(h).

2

Plaintiff avers that laboratory testing and analysis showed that "[n]one of the evidentiary samples tested from the Subject Locations were validated as 100 Octane.  The evidentiary samples taken at the Subject Locations, despite being portrayed and sold as '100 Octane' tested at 97 Octane or below."  (Compl. ¶ 12.)

Plaintiff alleges that Defendant, willfully and intentionally, misrepresented the nature, characteristics and qualities of Defendant's product in its labeling, marketing and product displays.  Plaintiff further claims that Defendant "caused these literally false statements to enter interstate commerce and such statements have actually and materially deceived a substantial number of consumers, and have a continuing tendency to further deceive consumers."  (Compl. ¶ 18.) Plaintiff also alleges that as a direct competitor of Defendant, Plaintiff "has been harmed by consumer reliance upon such misrepresentations, which has enabled Defendants to price their 100 Octane produce below the true market value of bona fide, 100 Octane fuel ... [and] has resulted in competitive harm and has unfairly diverted sales to Defendants."  (Compl. ¶ 31.)

Plaintiff filed the present action on July 27, 2009, alleging federal and state law claims for false advertising and a state law unfair competition claim.  Defendant now moves to dismiss all of Plaintiff's claims for failure to state a claim, on the grounds that such claims are preempted by federal law, or in the alternative, for failure to plead fraud with particularity.

///

///

3

1                                **STANDARD**

2        On a motion to dismiss for failure to state a claim under

3   Rule 12(b)(6), all allegations of material fact must be accepted

4   as true and construed in the light most favorable to the

5   nonmoving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336,

6   337-38 (9th Cir. 1996).  A complaint will not be dismissed for

7   failure to state a claim "'unless it appears beyond doubt that

8   plaintiff can prove no set of facts in support of her claim that

9   would entitle her to relief.'"  <u>Yamaguchi v. Dep't of the Air</u>

10  <u>Force</u>, 109 F.3d 1475, 1480 (9th Cir. 1997) (quoting <u>Lewis v. Tel.</u>

11  <u>Employees Credit Union</u>, 87 F.3d 1537, 1545 (9th Cir. 1996).

12       Federal Rule of Civil Procedure 8(a)(2) requires only "a

13  short and plain statement of the claim showing that the pleader

14  is entitled to relief," in order to "give the defendant fair

15  notice of what the . . . claim is and the grounds upon which it

16  rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.

17  Ed. 2d 80 (1957).  One exception to this general policy of

18  liberality in pleading is fraud or mistake, which instead

19  requires a heightened standard.  In alleging fraud or mistake, "a

20  party must state with particularity the circumstances

21  constituting fraud or mistake."  Fed. R. Civ. P. 9(b) (emphasis

22  added); <u>Desaigoudar v. Meyercord</u>, 223 F.3d 1020, 1022-23 (9th

23  Cir. 2000) (Fraud must be pled "with a high degree of

24  meticulousness.").

25  ///

26  ///

27  ///

28  ///

                                      4

1    If the court grants a motion to dismiss a complaint, it must
2    then decide whether to grant leave to amend.  The court should
3    "freely give" leave to amend when there is no "undue delay, bad
4    faith[,] dilatory motive on the part of the movant...undue
5    prejudice to the opposing party by virtue of...the amendment,
6    [or] futility of the amendment...."  Fed. R. Civ. P. 15(a); Foman
7    v. Davis, 371 U.S. 178, 182 (1962).  Generally, leave to amend is
8    only denied when it is clear that the deficiencies of the
9    complaint cannot be cured by amendment.  DeSoto v. Yellow Freight
10   Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

**ANALYSIS**

11

12   **A.   Preemption**

13   Defendant contends that Title II of the Petroleum Marketing
14   Practices Act ("PMPA"), 15 U.S.C. §§ 2821-2824, preempts both the
15   state and federal law claims presented by Plaintiff.  Defendant
16   further argues that in the absence of express preemption,
17   conflict and/or obstacle preemption bars those claims.  Defendant
18   claims that because the PMPA does not contain a private right of
19   action but rather allegedly gives the Federal Trade Commission
20   exclusive authority to enforce its provisions, Plaintiff cannot
21   rely on the general statutes proscribing unfair business
22   practices to state a private claim not permitted by the PMPA.

23   The Court will first set forth the principles of preemption
24   before applying such principles to the facts of this case.

25   ///
26   ///
27   ///
28   ///

5

### 1.   General Preemption Principles

Under the Supremacy Clause in the Constitution, state laws that conflict with federal law are without effect. <u>Altria Group, Inc. v. Good</u>, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008) ("Article VI, cl. 2, of the Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; ... any Thing in the Constitution of Laws of any state to the Contrary notwithstanding.'").  The Federal Government, acting within the authority it possesses under the Constitution, is empowered to preempt state laws to the extent it is believed that such an action is necessary to achieve its purposes. <u>See</u> <u>New York v. FCC</u>, 486 U.S. 57, 63-64, 108 S. Ct. 1637, 100 L. Ed. 2d 48 (1988).

Congress may indicate preemptive intent through a statute's express language or through its structure and purpose. <u>Altria</u>, 129 S. Ct. at 543.  However, the presence of an express preemption clause does not immediately end the inquiry; "the question of the substance and scope of Congress' displacement of state law remains." <u>Id.</u>  Preemption may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law. <u>Id.</u> (citation omitted). Irrespective of the variety of preemption at issue, the Court is guided by the rule that "'[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case."

///

///

///

6

1  Id. (citations omitted); <u>City of Auburn v. United States</u>, 154

2  F.3d 1025, 1031 (9th Cir. 1998) ("[T]he pivotal question is not

3  the nature of the state regulation, but the language and

4  congressional intent of the specific federal statute." (citations

5  omitted)).

6      Because the States are independent sovereigns in our federal

7  system, the federal courts have long presumed that Congress does

8  not cavalierly preempt state-law causes of action.   <u>Bates v. Dow</u>

9  <u>Agrosciences LLC</u>, 544 U.S. 431, 449, 125 S. Ct. 1788, 161 L. Ed.

10  2d 687 (2005) (citations and quotations omitted); <u>Altria</u>, 129 S.

11  Ct. at 543 ("When addressing questions of express or implied pre-

12  emption, we begin our analysis 'with the assumption that the

13  historic police powers of the States [are] not to be superseded

14  by the Federal Act unless that was the clear and manifest purpose

15  of Congress.'" (citation omitted)).  This assumption applies with

16  particular force when Congress has legislated in a field

17  traditionally occupied by the States.   <u>Altria</u>, 129 S. Ct. at 543.

18  Therefore, when the text of a preemption clause is susceptible to

19  more than one plausible reading, courts ordinarily "accept the

20  reading that disfavors pre-emption."   <u>Bates</u>, 544 U.S. at 449.

21      The Court begins by first noting that the States have

22  traditionally occupied the area of regulating petroleum products.

23  In California, the laws relating to petroleum products were first

24  enacted in 1931 and are found in the California Business and

25  Professions Code, Division 5, Chapters 14 and 15.  Regulations

26  that further define and implement the laws are found in the

27  California Code of Regulations, Title 4, Division 9, Chapters 6,

28  7, and 8.

1  Therefore, there is a strong presumption that state law claims

2  are not to be superseded unless that was the clear and manifest

3  purpose of Congress.

4      The Court will now examine the language and congressional

5  intent, including the legislative history, of the PMPA before

6  turning to whether the PMPA preempts Plaintiff's claims.

7                  **2.  Petroleum Marketing Practices Act**

8      In June 1978, Congress enacted the Petroleum Marketing

9  Practices Act ("PMPA"),[2] title II of which regulates the testing

10 and disclosure of the octane rating of gasoline, as well as the

11 determination, certification, and display of octane ratings.[3]

12 Under the PMPA, every gasoline refiner who distributes fuel in

13 commerce must determine the octane rating of such gasoline, in

14 accordance with FTC guidelines, and certify this rating to any

15 entity to whom the gasoline is distributed.  15 U.S.C. § 2822(a)

16 (2008).  Then, each entity in the distribution chain must certify

17 the octane rating to the next recipient, based either on its own

18 determination or on the certification it received from its

19 distributor.  15 U.S.C. § 2822(b).

20 ///

21

---

22      [2] The PMPA was enacted on June 19, 1978.  Only Title II of
   the PMPA is germane to this case; all references to the PMPA
23 pertain only to Title II, unless otherwise noted, which is
   codified at 15 U.S.C. §§ 2821-2824.
24

25      [3] The stated purpose of the PMPA is "to require the testing,
   certification and posting of the octane rating of gasoline sold
26 at retail and the display on any new automobile of the proper
   octane rating for that automobile."  S. Rep. No. 95-731, at 1
27 ("[T]he Act ... [is] to encourage conservation of automotive
   gasoline and competition in the marketing of such gasoline by
28 requiring that information regarding the octane rating of
   automotive gasoline be disclosed to consumers ....").

1  And finally, each gasoline retailer must then display, in a clear
2  and conspicuous manner, at the point of sale to the ultimate
3  purchaser, the octane rating of the gasoline, based either on its
4  own determination or on that certified to it by the distributor.
5  15 U.S.C. § 2822(c).

6     As initially codified, Section 204 of the PMPA set forth a
7  broad express preemption clause:

> To the extent that any provision of this
> subchapter applies to any act or omission, no State or
> any political subdivision thereof may adopt, *enforce*,
> or continue in effect any provision of any law or
> regulation (including any remedy or penalty applicable
> to any violation thereof) with respect to such act or
> omission, unless such provision of such law or
> regulation is the same as the applicable provision of
> this subchapter.

13  15 U.S.C. § 2824 (1988), <u>amended by</u> 15 U.S.C. § 2824 (1992)
14  (emphasis added).  Thus, state law dealing with any act or
15  omission to which the provisions of the title also apply was
16  preempted unless the provision of state law was "the same as" the
17  applicable provision of the title.  S. Rep. No. 95-731, at 45
18  (1978), <u>as reprinted in</u> 1978 U.S.C.C.A.N. 873, 903.  Furthermore,
19  Section 203 delegates to the Federal Trade Commission ("FTC") the
20  procedural, investigative, and enforcement powers and does not
21  provide for a private right of action, unlike Title I of the
22  PMPA.[4]  15 U.S.C. § 2823.  Therefore, the PMPA preempted most
23  state law and precluded enforcement action by the state.
24  ///
25  ///
26

---

27  [4] Title I of the PMPA provides: "If a franchisor fails to
    comply with the requirements of section 2802, 2803, or 2807 of
28  this title, the franchisee may maintain a civil action against
    such franchisor."  15 U.S.C. § 2805.

In 1992, Congress amended the PMPA.  As amended, the current preemption clause reads:

> (a) To the extent that any provision of this subchapter applies to any act or omission, no State or any political subdivision thereof may adopt or continue in effect, *except as provided in subsection (b) of this section*, any provision of law or regulation with respect to such act or omission, unless such provision of such law or regulation is the same as the applicable provision of this subchapter.
> (b) A State or political subdivision thereof may provide for any investigative or enforcement action, remedy, or penalty (including procedural actions necessary to carry out such investigative or enforcement actions, remedies or penalties) with respect to any provision of law or regulation permitted by subsection (a) of this section.

15 U.S.C. § 2824 (2008) (as amended by H.R. 776, 102d Cong. (1992)) (emphasis added).

Congress' intent in amending the PMPA was to provide "the states more authority to enforce octane posting requirements." H.R. Rep. No. 102-474(I), at 151 (1992), as reprinted in 1992 U.S.C.C.A.N. 1954, 1974.  H.R. 776 was introduced after a two-year investigation by the General Accounting Office (GAO) estimated that "nine percent of a nationwide sample of gasoline sold in 1988 was mislabeled by at least half an octane point, the amount considered a significant violation."  Id.  Further, Congress found that although vested with the authority, the Federal government had failed to test or enforce gasoline octane compliance since 1981.  Id.  Congress recognized that "states' attempts to prosecute octane labeling violations are hampered because the Petroleum Marketing Practices Act (PMPA) preempts many effective state enforcement procedures."  Id.

///

///

1   Ultimately, H.R. 776 "allow[ed] states broader authority to
2   enforce octane mislabeling and posting on their own ...." <u>Id.</u>
3   ("In short, this legislation ... recognizes that motorists have a
4   right to know that they are getting what they pay for, and that
5   dealers have a right to know that their competitors are not
6   cheating.  The Federal government has not enforced the law; the
7   legislation gets them out of the way and allows the states to do
8   the job.").  Congress further explained, "[u]nder this section,
9   certain existing restrictions in the PMPA on state enforcement
10  would be repealed.  States would be allowed broader authority to
11  enforce octane mislabeling and posting.  States could provide for
12  any investigative or enforcement act necessary to enforce octane
13  posting requirements under [the PMPA]." <u>Id.</u> at 220.

14      Therefore, currently under the PMPA, for any act or omission
15  covered by the PMPA, so long as the state law is not different
16  from or in addition to the requirements under the PMPA, the state
17  law can be used to enforce the PMPA and is not preempted by such.

18      The Court now turns to Plaintiff's state law claims to
19  assess whether or not they are "the same as" PMPA's requirements.

20              **3.  Unfair Competition Claim**

21      Plaintiff's Second Claim is for violation of California's
22  Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200
23  <u>et seq.</u>  This statutory scheme prohibits any "unlawful, unfair or
24  fraudulent business act or practice and unfair, deceptive, untrue
25  or misleading advertising and any act prohibited by [Cal. Bus. &
26  Prof. Code §§ 17500 <u>et seq.</u>]."  Cal. Bus. & Prof. Code § 17200.
27  ///
28  ///

11

"By proscribing 'any unlawful' business practices, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 180 (1999) (internal quotations and citations omitted). The "unlawful" prong of the UCL, thus, effectively turns a violation of the underlying law into a per se violation of the UCL. See Kasky v. Nike, Inc., 27 Cal.4th 939, 950 (2002); Cel-Tech Communications, 20 Cal.4th at 180.

Plaintiff alleges that Defendant is "competing unfairly by knowingly selling fuel that is misrepresented to consumers as 100 Octane when it is not." (Compl. ¶ 23.) Defendant argues that Plaintiff's claim must fail because the PMPA does not provide for a private right of action for its violation but rather gives the FTC the enforcement authority, and thus the courts have no authority to enforce any violations of the PMPA. Defendant further argues that "*any state law version of the PMPA can only be enforced by the state or by state agencies.*" (Def.'s Mtn 6.)

First, Plaintiff is not attempting to bring an action under the PMPA; therefore, the fact that the PMPA does not provide a private right of action is not determinative. Furthermore, Defendant's interpretation of the preemption clause is too narrow and would have this Court ignore the 1992 amendment to the PMPA's express preemption clause. The statute currently provides that "[a] State or political subdivision thereof may provide for *any* investigative or enforcement action, remedy, or penalty ... permitted ...." 15 U.S.C. § 2824(b) (emphasis added).

The legislative history set forth above makes it clear that Congress amended Title II of the PMPA to allow States the authority to enforce octane disclosure requirements.

Here, the State of California has provided that any unlawful business practices, including violations of laws for which there is no direct private right of action, may be redressed by private action under the UCL; it is not necessary that the predicate law provide for private civil enforcement. See Summit Technology, Inv. v. High-Line Medical Instruments, Co., 933 F.Supp. 918 (C.D. Cal. 1996)  Furthermore, Defendant has not indicated any authority for the proposition that the courts are not a political subdivision of the State.

Defendant further argues that the state law UCL cause of action is not "the same as" the applicable provision of the PMPA, and thus are expressly preempted by such.   In Jurman v. Sun Co., 248 A.D.2d 246, 671 N.Y.S.2d 218 (N.Y. App. Div. 1998) the Supreme Court, Appellate Division of New York held that plaintiffs' claims were "preempted by the Petroleum Marketing Practices Act, Octane Disclosure in that the preemption clause bans any State 'provision of any law or regulation' that is not the same as the Federal provisions." Id. (internal citations omitted).  The Court further explained: "Were we not to find express preemption, we would find implied preemption, in that State standards setting stricter requirements for the posting of information regarding octane level 'would unavoidably result in serious interference with the "accomplishment and execution of the full purposes and objectives of Congress."'" Id. (citation omitted).

1    Here, we are not dealing with an attempt to set stricter

2 standards.  Instead, the pertinent issue in this case is whether

3 to allow the State to enforce the Federal standard.  Because the

4 UCL "adopts" the underlying law for purposes of the action, then

5 the predicate law here, PMPA, would be "the same as" the PMPA.[5]

6 Plaintiff alleges that Defendant is "competing unfairly by

7 knowingly selling fuel that is misrepresented to consumers as 100

8 Octane when it is not."  (Compl. ¶ 23.)  Plaintiff appears to

9 claim then that Defendant knowingly mis-certified the octane

10 rating of the gasoline it distributed to Sunoco retailers.  This

11 presumably could have occurred for any number of reasons,

12 including an intentional violation of the PMPA, or simply because

13 the octane rating certified to Defendant by its refiner was

14 inaccurate.

15    Defendant also argues that, in the absence of express

16 preemption, Plaintiff's UCL claim should be impliedly preempted.

17 However, there is no conflict in complying with both the PMPA and

18 the UCL; compliance with the PMPA would mean that there is no

19 violation of underlying law.  Furthermore, it is evident that

20 Congress did not intend to regulate the entire field as it

21 amended Section 204 of the PMPA to allow states to provide for

22 any enforcement action for violations.

23 ///

24

25    [5] Furthermore, violations of the legislative requirements
were enforceable by the FTC as unfair or deceptive trade
26 practices under Section 5 of the Federal Trade Commission Act, 15
U.S.C. § 2823(e).  Section 5 states: "[u]nfair methods of
27 competition in or affecting commerce, and unfair or deceptive
acts or practices in or affecting commerce, are hereby declared
28 unlawful."  15 U.S.C. § 45.

Accordingly, the Court finds that Plaintiff's Second Claim for Unfair Competition, pursuant to Cal. Bus. & Prof. Code § 17200, is not preempted by Title II of the PMPA.

### 4. False Advertising Claim

Plaintiff's Third Claim is for False Advertising under California Business and Professions Code §§ 17500 et seq. ("FAL"). Section 17500 provides:

> It is unlawful for any ... corporation ... to make or disseminate or cause to be made or disseminated before the public in this state, ... in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, ... which is untrue or misleading, *and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading ....*

Cal. Bus. & Prof. Code § 17500 (emphasis added).

Defendant again argues that the provisions of section 17500 are not "the same as" the PMPA and thus Plaintiff's claim must fail. However, it is not *the act* of certifying or displaying the octane level that Plaintiff complains about. Rather, it is the act of *intentionally* misrepresenting the octane level that Plaintiff takes issue. Plaintiff alleges that Defendant is "making or condoning the posting of signage, placards, displays, and other public outcries or proclamations that misrepresented the true octane level of the products they sold and/or caused to be sold to the public." (Compl. ¶ 28.) A false or misleading advertisement is unlawful only if the advertiser knows, or in the exercise of reasonable care should know, of its false or misleading character.

///

///

1    Defendant argues that under the PMPA, a distributor, such as

2 Defendant, need not know the actual octane of the fuel it

3 distributes and may, instead, rely on the refiner's stated octane

4 level.  Here, however, Plaintiff is alleging that Defendant did

5 *not have knowledge* of the actual octane rating.  Here, the "act"

6 complained of is the misleading/false advertising, not the

7 certification or display of the octane rating.  The PMPA does not

8 regulate *the act* of advertising petroleum products.  Therefore,

9 the PMPA does not expressly preempt Plaintiff's false advertising

10 claim because the express preemption clause only pertains "[t]o

11 the extent that any provision of this subchapter applies to any

12 act or omission."  15 U.S.C. § 2824.

13    Furthermore, Plaintiff's state law false advertising claim

14 is not impliedly preempted, either through conflict or

15 obstruction.  As Congress noted, "This rule of construction is

16 not, however, intended to authorize intentionally deceptive or

17 misleading identification of automotive gasoline.  Such would be

18 the case if the trademark to be utilized were '100 Octane' and

19 this trademark were to be utilized to identify automotive

20 gasoline with an octane rating of less than 100 under the

21 statutory definition."  S. Rep. No. 95-731, at 30.  Therefore,

22 Congress did not intend for the PMPA to regulate the entire field

23 of petroleum marketing.

24    The Court in <u>Alvarez v. Chevron Corp.</u>, No. CV 09-3343-GHK

25 (CWX), 2009 U.S. Dist. LEXIS 94377 (C.D. Cal. Sept. 30, 2009),

26 recently held that the PMPA did preempt the plaintiffs'

27 California false advertising claim.

28 ///

The Court also dismissed the plaintiffs' California unfair competition claim, but not on the grounds of preemption. However, Plaintiff's claim here is factually distinguishable from that in <u>Alvarez</u>.  In <u>Alvarez</u>, the plaintiff claimed "[d]efendants misled consumers by making untrue statements and failing to disclose .... [that] the initial 0.2 -0.3 gallons of such motor fuel sold had a lower octane rating due to the residual fuel remaining in the fuel dispensing system from a prior customer who had purchased a lower grade of motor fuel." <u>Alvarez</u>, 2009 U.S. Dist. LEXIS 94377 at *13.  The <u>Alvarez</u> court found that plaintiff's false advertising claim was preempted because "we cannot require Defendants to disclose more information than is expressly required by these provisions." <u>Id.</u> at *15.  Here, however, Plaintiff is not requesting that Defendant disclose more information than required, only that Defendant's disclosure be accurate and truthful.

Accordingly, Plaintiff's Third Claim for False Advertising, pursuant to Cal. Bus. & Prof. Code § 17500, is not preempted by Title II of the PMPA.

The Court will now turn to Plaintiff's federal Lanham Act Claim to determine whether the PMPA preempts that claim.

### 5.   Lanham Act Claim

Plaintiff's First Claim is for false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

///

///

///

17

Section 43(a) prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services.[6]  <u>Waits v. Frito-Lay, Inc.</u>, 978 F.2d 1093, 1106.

When two federal statutes conflict, federal statutory construction requires that specific statutory frameworks take precedence over more general prohibitions.  <u>Accord</u> <u>In re Padilla</u>, 222 F.3d 1184, 1192 (9th Cir. 2000) ("Where both a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first.").  It is also well established that, whenever possible, a court should interpret two seemingly inconsistent statutes to avoid a potential conflict.  <u>California</u> <u>ex rel. Sacramento Metropolitan Air Quality Management Dist. v.</u> <u>United States</u>, 215 F.3d 1005, 1012 (9th Cir. 2000) ("The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." (citation omitted)).

///

---

[6] 15 U.S.C. § 1125(a): Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

1  For the following reasons, the Court finds that the Lanham Act

2  Section 43(a) and title II of the PMPA are not capable of co-

3  existence and thus the more specific provisions of the PMPA must

4  prevail.

5      In order to state a claim for false advertising under the

6  Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must plead: (1) in

7  commercial advertisements, defendant made false statements of

8  fact about its own or another's product; (2) those advertisements

9  actually deceived or have the tendency to deceive a substantial

10 segment of their audience; (3) such deception is material, in

11 that it is likely to influence the purchasing decision; (4) the

12 defendant caused its misrepresentation to enter interstate

13 commerce; and (5) plaintiff has been or is likely to be injured

14 as a result of the foregoing either by direct diversion of sales

15 from itself to defendant, or by lessening of the goodwill which

16 its products enjoy with the buying public.  Rice v. Fox

17 Broadcasting Co., 330 F.3d 1170 (9th Cir. 2003).  To demonstrate

18 falsity within the meaning of the Lanham Act, a plaintiff must

19 show that the statement was literally false, either on its face

20 or by necessary implication, or that the statement was literally

21 true but likely to mislead or confuse consumers.  Southland Sod

22 Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).

23     The specific provisions of the PMPA allow the distributor to

24 rely on the certification it received from the supplier. 15

25 U.S.C. § 2822.

26 ///

27 ///

28 ///

19

1  Because knowledge of falsity is not a prerequisite to a finding

2  of a violation under Section 43(a) of the Lanham Act, a defendant

3  could be in complete compliance with the PMPA, by relying on its

4  refiner's certification of the octane rating, and still be in

5  violation of Section 43(a).  A defendant who has relied on an

6  inaccurate certification would necessarily be in violation of

7  Section 43(a) for any advertisements it makes in accordance with

8  such certification because the statements would be literally

9  false.  In other words, a defendant could unknowingly make false

10 advertisements in accordance with the PMPA certification chain

11 and unwittingly violate Section 43(a).  However, a person cannot

12 be held liable for "performing a duty which the law at that time

13 required him to perform."  Accord Hoffman v. Halden, 268 F.2d

14 280, 300 (9th Cir. 1959) (reversed on unrelated grounds).

15 Allowing a Section 43(a) claim would nullify the safe harbor

16 provision of the PMPA.  See California ex rel. Sacramento

17 Metropolitan Air Quality Management Dist., 215 F.3d at 1013 ("It

18 is fundamental that a general statutory provision may not be used

19 to nullify or to trump a specific provision, irrespective of the

20 priority of enactment.").

21      Accordingly, Plaintiff's Section 43(a) Lanham Act Claim is

22 preempted by the PMPA and as such is dismissed with prejudice.[7]

23 ///

24 ///

---

26 [7] The Court notes that Plaintiff's Complaint asserts federal
   jurisdiction based on federal question, 28 U.S.C. § 1331, and
27 diversity jurisdiction, 28 U.S.C. § 1332(a)(1).  Therefore, while
   there is no longer a federal question, the Court retains
28 jurisdiction over this matter pursuant to diversity jurisdiction.

1   The Court now turns to Defendant's argument that even if
2   Plaintiff's state law claims are not preempted by the PMPA, such
3   claims should nevertheless be dismissed for failure to allege the
4   deceptive practices at issue with sufficient particularity.

5   **B.   Pleading Fraud with Particularity**

6    Defendant argues that all of Plaintiff's claims essentially
7   sound in fraud and thus must be plead with particularity under
8   Federal Rule of Civil Procedure 9(b) to survive a motion to
9   dismiss.  Defendant's main contention is that Plaintiff's
10  allegations do not identify any misrepresentation made by
11  Defendant, much less any basis for inferring that Defendant
12  knowingly made such misrepresentations.  Defendant further argues
13  that the time, place, content and parties to any supposed
14  misrepresentation are not alleged by Plaintiff.  Plaintiff
15  asserts that its claims are not based in fraud, but even if they
16  are, sufficient facts have been alleged to survive the heightened
17  pleading standard.

18  The California Supreme Court has held "[t]he requirement
19  that fraud be pleaded with specificity ... does not apply to
20  causes of action under the consumer protection statutes,"
21  specifically referring to Sections 17200 and 17500.  Committee on
22  Children's Television, Inc. v. General Foods Corp., 35 Cal.3d
23  197, 212 n.11, superseded on other grounds by statute in Gartin
24  v. S&M NuTec LLC, 245 F.R.D. 429 (C.D. Cal. 2007). However, the
25  Ninth Circuit recently addressed the subject:
26  ///
27  ///
28  ///

1      Kearns's first argument – that Rule 9(b) does not
2   apply to California's consumer protection statutes
    because California courts have not applied rule 9(b) to
3   the Consumer Protection Statutes, which include the
    CLRA and UCL – is unavailing.  It is well-settled that
4   the Federal Rules of Civil Procedure apply in federal
    court, "irrespective of the source of the subject
5   matter jurisdiction, and irrespective of whether the
    substantive law at issue is state or federal."  <u>Vess</u>
6   [v. Ciba-Geigy Corp. USA], 317 F.3d [1097,] at 1103
    .... The UCL prohibits "unlawful, unfair or fraudulent
7   business act[s] or practice[s]" and "unfair, deceptive,
    untrue or misleading advertising."  Cal. Bus. & Prof.
8   Code § 17200.  Rule 9(b)'s particularity requirement
    applies to these state-law causes of action.  <u>Vess</u>, 317
9   F.3d at 1102-05....

10      While fraud is not a necessary element of a claim
    under ... UCL, a plaintiff may nonetheless allege that
11   the defendant engaged in fraudulent conduct.  <u>Id.</u> at
    1103.  A plaintiff may allege a unified course of
12   fraudulent conduct and rely entirely on that course of
    conduct as the basis of that claim.  In that event, the
13   claim is said to be 'grounded in fraud' or to 'sound in
    fraud,' and the pleading ... as a whole must satisfy
14   the particularity requirement of Rule 9(b).  <u>Id.</u> at
    1103-04.

15  <u>Kearns v. Ford Motor Corp.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009).

16      Reviewing the Complaint, Plaintiff alleges that Defendant

17  engaged in a fraudulent course of conduct (i.e., knowingly

18  misrepresenting the Octane level of the gasoline that it

19  distributed) and such conduct resulted in violations of the UCL

20  and FAL.  Under the heading "FACTUAL ALLEGATIONS COMMON TO ALL

21  CLAIMS," Plaintiff alleges that Defendant "has thus *defrauded* an

22  unknown number of consumers whom have paid for what they believed

23  to be 100 Octane racing fuel, when in fact what they received was

24  97 Octane or less."  (Compl. ¶ 13 (emphasis added).)

25  Plaintiff further alleges under the same heading that Defendant

26  "has *defrauded* consumers in the manner alleged ...."  (Compl. ¶

27  14 (emphasis added).)

28  ///

These allegations are specifically incorporated by reference in Plaintiff's state law claims under the UCL and FAL.  (Compl. ¶¶ 22, 26.)  Furthermore, Plaintiff specifically alleges under its Second Claim (UCL) that "[D]efendants are competing unfairly by *knowingly* selling fuel that is *misrepresented* to consumers as 100 Octane when it is not."  (Compl. ¶ 23 (emphasis added.)  Likewise, Plaintiff's Third Claim (FAL) alleges that Defendant "knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading."  (Compl. ¶ 28.)  Therefore, the Court finds that Plaintiff's state law claims are "grounded in fraud" and thus must be pleaded with particularity.

The Court now turns to Plaintiff's state law claims to determine whether Plaintiff has satisfied this heightened pleading standard.

### 1.   Unfair Competition Claim

California's Business and Professions Code § 17200 ("UCL") defines unfair competition as "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [Cal. Bus. & Prof. Code §§ 17500 et seq.]."  Therefore, in order to state a cause of action for unfair competition under the UCL, a plaintiff must allege either: (1) an unlawful act; (2) an unfair act; (3) a fraudulent act; or (4) false advertising.

Plaintiff alleges that Defendant's practices constitute unfair competition because "(1) they are unlawful, unfair or fraudulent, and (2) they involve unfair, deceptive, untrue or misleading advertising ...."  (Compl. ¶ 24.)

///

1  Thus, it appears that Plaintiff is attempting to state a cause of

2  action under each prong.  Therefore, the Court will examine each

3  of these in turn, except false advertising, which the Court will

4  discuss separately in Section 2 below.

### a.   Unlawful Act

6      "Unlawful" practices are practices "forbidden by law, be it

7  civil or criminal, federal, state, or municipal, statutory,

8  regulation, or court-made."  Saunders v. Superior Court, 27 Cal.

9  App. 4th 832, 838-39 (1994) (citing People v. McKale, 25 Cal.3d

10 626, 632 (1979)).  To state a cause of action based on an

11 "unlawful" business act or practice under the UCL, a plaintiff

12 must allege facts sufficient to show a violation of some

13 underlying law.  McKale, 25 Cal.3d at 635.

14     As noted above, Plaintiff's Lanham Act claim is preempted

15 and thus the Lanham Act cannot be the predicate law for

16 Plaintiff's UCL claim.  Furthermore, as explained below,

17 Plaintiff's state law false advertising claim fails as well.  As

18 Plaintiff has not identified any other predicate law in its

19 complaint whereby Defendant's actions may be found "unlawful,"

20 Plaintiff has failed to state a cause of action under the

21 "unlawful" prong of the UCL.

### b.   Unfair Act

23     A business act or practice is "unfair" when the conduct

24 "threatens an incipient violation of an antitrust law, or

25 violates the policy or spirit of one of those laws because its

26 effects are comparable to a violation of the law, or that

27 otherwise significantly threatens or harms competition."

28 ///

24

1  Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co., 20

2  Cal.4th 163, 187 (1999).  To sufficiently plead an action based

3  on an "unfair" business act or practice, a plaintiff must allege

4  facts showing the "unfair" nature of the conduct and that the

5  harm caused by the conduct outweighs any benefits that the

6  conduct may have.  Motors, Inc. v. Times Mirror Co., 102 Cal.

7  App. 3d 735, 740 (1980) ("[S]ince the complaint is unlikely to

8  reveal defendant's justification, if th[e] pleading states a

9  prima facie case of harm, ... the defendant should be made to

10 present its side of the story.").

11     Plaintiff alleges that Defendant's conduct "has enabled

12 Defendants to price their 100 Octane product below the true

13 market value of bona fide, 100 Octane fuel."  (Compl. ¶ 31.)

14 Plaintiff further alleges that such practice "has resulted in

15 competitive harm and has unfairly diverted sales to Defendant[]."

16 (Id.)  Therefore, the Court concludes that Plaintiff has

17 sufficiently alleged harm such that Defendant should be made to

18 answer.  As such, Plaintiff properly states a cause of action

19 under the "unfair" prong of the UCL.

20              **c.   Fraudulent Act**

21     A "fraudulent" business act or practice is one in which

22 members of the public are likely to be deceived.  Hall v. Time,

23 Inc., 158 Cal. App. 4th 847, 849 (2008); Olsen v. Breeze, Inc.,

24 48 Cal. App. 4th 608, 618 ("'Fraudulent,' as used in the statute,

25 does not refer to the common law tort of fraud but only requires

26 a showing members of the public 'are likely to be deceived.'"

27 (citation omitted)).

28 ///

1   Thus, in order to state a cause of action based on a "fraudulent"

2   business act or practice, the plaintiff must allege that

3   consumers are likely to be deceived by the defendant's conduct.

4   Committee on Children's Television, Inc. v. General Foods Corp.,

5   35 Cal.3d 197, 212 (1983).

6       Plaintiff alleges that Defendant is the distributor of 100

7   Octane fuel at Sunoco retail locations throughout California.

8   (Compl. ¶ 9.)  Plaintiff specifically alleges that in June 2009,

9   Plaintiff procured numerous samples of gasoline from 10 of these

10  retail locations allegedly supplied by Defendant.  (Compl. ¶ 9.)

11  Furthermore, Plaintiff has expressly identified these 10 retail

12  locations, including the store names and locations.  (Id.)

13  Plaintiff further alleges that samples of gasoline portrayed and

14  sold as "100 Octane" taken from the Subject Locations tested as

15  97 Octane or below.  (Compl. ¶ 12.)  Plaintiff asserts "GP has

16  thus defrauded an unknown number of consumers whom have paid for

17  what they believed to be 100 Octane racing fuel, when in fact

18  what they received was 97 Octane or less."  (Compl. ¶ 13.)

19  By reasonable inference, Plaintiff has alleged that Defendant's

20  certification of the fuel rating as 100 Octane at the Subject

21  Locations likely misled consumers into believing that such fuel

22  was in fact 100 Octane, when in actuality, it was not.  The Court

23  finds that Plaintiff's allegations are sufficiently particular to

24  give the Defendant fair notice of what the claim is and the

25  grounds upon which it rests.

26      As such, Plaintiff sufficiently states a cause of action

27  under the "fraudulent" prong of the UCL.

28  ///

1    Accordingly, Plaintiff has stated a cause of action under

2    the "unfair" and "fraudulent" prongs of the UCL, but not under

3    the "unlawful" prong.  Therefore, Plaintiff's Second Claim is

4    dismissed with leave to amend to the extent that such claim is

5    based on the "unlawful" prong of the UCL.

6    The Court now turns to Plaintiff's claims of false

7    advertising under the UCL and California's False Advertising Law.

8                    **2.   False Advertising Claim**

9    California's False Advertising Law (FAL) prohibits the

10   dissemination in *any advertising media* of any "statement"

11   concerning real or personal property offered for sale, "which is

12   untrue or misleading, and which is known, or which by the

13   exercise of reasonable care should be known, to be untrue or

14   misleading."  Cal. Bus. & Prof. Code § 17500.

15   "[T]o state a claim under either the UCL or the false

16   advertising law, based on false advertising or promotional

17   practices, 'it is necessary only to show that "members of the

18   public are likely to be deceived."'"  In re Tobacco II Cases, 46

19   Cal.4th 298, 312 (2009) (quoting Kasky v. Nike, Inc., 27 Cal.4th

20   939, 951 (2002)).[8]  Accordingly, a plaintiff must allege: (1)

21   statements in the advertising are untrue or misleading, and (2)

22   defendant knew, or by the exercise of reasonable care should have

23   known, that the statements were untrue or misleading.  People v.

24   Lynam, 253 Cal. App. 2d 959, 965 (1967).

25   ///

26

27   [8] A violation of the UCL's fraud prong is also a violation
     of false advertising law (§ 17500 et seq.).  Committee on
     Children's Television, Inc. v. General Foods Corp., 35 Cal.3d
28   197, 210 (1983).

1    The underlying element of a false advertising claim is some
2    type of advertising statement.  <u>See</u> <u>Tayag</u>, 2009 U.S. Dist. LEXIS
3    33260, at *5-6 ("The content of the alleged misrepresentation is
4    necessary to state a claim, as is an allegation of what is false
5    or misleading about the statement.").  The Complaint is void of
6    any such factual allegation.  The only allegation in the
7    Complaint regarding advertisements is "Sunoco 260 GT 100, which
8    has the highest octane rating of any street legal fuel, is now
9    available at selected retail locations."  (Compl. 3 n.1.)  This
10   statement, however, was made by Sunoco, Inc., not Defendant, as
11   evidenced by the website address. (Compl. 3 n.1
12   ("http://www.sunocoinc.com/Site/Consumer/RaceFuels/260GT100Locati
13   ons/California.htm").)  Plaintiff has not alleged any
14   relationship between Sunoco, Inc. and Defendant whereby Defendant
15   could be held liable for the statement made by Sunoco, Inc.
16       Plaintiff alleges that Defendant, "in its labeling,
17   marketing and product displays, ha[s] misrepresented the nature,
18   characteristics, or qualities of [its] product by falsely
19   informing consumers that they are purchasing 100 Octane fuel,
20   when i[n] fact they are actually purchasing 97 or less Octane."
21   (Compl. ¶ 17.)  Plaintiff further alleges that Defendant is
22   "making or condoning the posting of signage, placards, displays,
23   and other public outcries or proclamations that misrepresent[]
24   the true octane level of the products they sold and/or caused to
25   be sold to the public."  (Compl. ¶ 28.)  No other facts are
26   provided.
27   ///
28   ///

1    As such, Plaintiff has not identified any advertisements by

2    Defendant but has merely asserted conclusory allegations that

3    Defendant made false statements in its advertising.  The Court

4    need not accept these conclusory allegations as true.  Plaintiff

5    has not alleged any facts as to the substance or even existence

6    of these labeling, marketing and product displays.  Therefore,

7    the Court finds that Plaintiff has not satisfied heightened the

8    pleading standard.

9    Accordingly, Plaintiff's state law false advertising claim,

10   under both the UCL and the FAL, is dismissed with leave to amend.

11                              **CONCLUSION**

12   Based on the foregoing, Defendant's Motion to Dismiss is

13   GRANTED with prejudice as to Plaintiff's First Claim for

14   violation of Section 43(a) of the Lanham Act, 15 U.S.C. §

15   1125(a)(1)(B).  Defendant's Motion to Dismiss is DENIED as to

16   Plaintiff's Second Claim for unfair competition in violation of

17   Cal. Bus. & Prof. Code § 17200 <u>et seq.</u>, to the extent such claim

18   is based on "unfair" or "fraudulent" practices, but GRANTED,

19   without prejudice, to the extent such claims are based on

20   "unlawful" practices or false advertising.  Defendant's Motion to

21   Dismiss is GRANTED without prejudice as to Plaintiff's Third

22   Claim for false advertising in violation of Cal. Bus. & Prof.

23   Code § 17500.

24   ///

25   ///

26   ///

27   ///

28   ///

1      Plaintiff may file a Second Amended Complaint, should it

2  choose to do so, not later than twenty (20) days following the

3  date this Memorandum and Order is electronically filed.

4      IT IS SO ORDERED.

5
   Dated: November 25, 2009

6

7

8  _____
   MORRISON C. ENGLAND, JR.
9  UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30