Lawrence Riff, Esq. (CSB No. 104826)
Jason Levin, Esq. (CSB No. 161807)
STEPTOE & JOHNSON LLP
633 West Fifth Street, Suite 700
Los Angeles, California 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599
Email:   lriff@steptoe.com
         jlevin@steptoe.com

Attorneys for Defendant
GENERAL PETROLEUM CORPORATION,
a California corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VP RACING FUELS, INC., <br><br>                    Plaintiff, <br><br> vs. <br><br> GENERAL PETROLEUM CORPORATION, <br><br>                    Defendant. | Case No. 2:09-CV-02067-MCE-GGH <br><br> **GENERAL PETROLEUM CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> HEARING DATE: March 25, 2010 <br> TIME: 2:00 p.m. <br> CRTRM: 7 <br> JUDGE: Morrison C. England, Jr. |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT ON March 25, 2010, at 2:00 p.m. in Courtroom 7 of the United States District Court, Eastern District of California, located at 501 "I" Street, Sacramento, California, Defendant General Petroleum

---

1

MOTION TO DISMISS FIRST AMENDED COMPLAINT

190012

Corporation ("General Petroleum") will and hereby does move to dismiss the First Amended Complaint.

The motion is brought under Federal Rules of Civil Procedure, Rules 12(b)(6) and 9(b), on the ground that the First Amended Complaint fails to state any claim for relief. More specifically, the motion should be granted because:

1) Plaintiff lacks statutory standing to proceed under any claim for relief;

2) Plaintiff fails to plead a claim for relief under California Business and Professions Code section 17200. To the extent the claim rests on alleged fraudulent advertising, the facts underlying the fraud have not been pleaded with the requisite specificity. Further, plaintiff has failed to allege any legally sufficient unlawful, fraudulent, or unfair conduct by defendant; and

3) Plaintiff fails to plead a claim for relief under California Business and Professions Code section 17500. The facts underlying the alleged fraudulent advertising have not been pleaded with the requisite specificity.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all pleadings and papers of record in this matter, and such further argument as the Court may consider at or before the hearing on this motion.

Dated: February 16, 2010            STEPTOE & JOHNSON LLP

By /s/ Jason Levin
Jason Levin, CA Bar No. 161807
*jlevin@steptoe.com*
Lawrence P. Riff, CA Bar No. 104826
*lriff@steptoe.com*
633 W. Fifth Street, Suite 700
Los Angeles, California 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

Attorneys for Defendant
General Petroleum Corporation

2
MOTION TO DISMISS FIRST AMENDED COMPLAINT

190012

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This case is about the sale of mislabeled racing gasoline. According to the complaint, fuel dealers in California had been selling a Sunoco "100 octane" racing fuel that was really only 97 octane. Plaintiff VP Racing, a fuel distributor, alleges that one of its competitors, defendant General Petroleum, increased sales by distributing the mislabeled fuel.

This is General Petroleum's second motion to dismiss. In its first motion, General Petroleum explained that its fuel distribution was in compliance with federal law. Under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801-2841, the refiner of a fuel (here, Sunoco) must test it for octane and certify the octane rating to fuel distributors. Fuel distributors like General Petroleum are entitled by law to rely on the refiner's octane certification. That is what happened here – Sunoco certified its racing fuel as having 100 octane, and General Petroleum distributed the so-called "100 octane" fuel in California. General Petroleum's compliance with federal octane labeling laws cannot be considered unfair competition.

In ruling on the first motion, the Court recognized that General Petroleum could not be sued for merely *distributing* fuel in reliance on a refiner's erroneous octane certificate. But the Court ruled that General Petroleum could be sued for falsely *advertising* the octane rating; advertising is not addressed by the PMPA. This led VP to file an amended complaint that focuses on advertising. Docket No. 17.

General Petroleum is now charged with unfair competition (under the UCL) and false advertising (under the FAL) arising from point-of-sale displays, placards, and signs that heralded the availability of 100 octane racing fuel. But the amended complaint has several defects that require its dismissal:

First, VP lacks standing to sue General Petroleum. Advertising claims under the UCL and FAL can only be brought by consumers and competitors who have been illegally or unfairly persuaded to give money to the defendant. Here, however, VP has not alleged that it ever relied on, or lost money because of, the octane advertising. Nor has VP alleged that it lost money that is now in General Petroleum's possession.

Second, the amended complaint fails to allege facts showing General Petroleum's liability for the point-of-sale advertising used by the fuel retailers. VP contends that General Petroleum was "aware of and legally responsible" for that advertising. But this type of conclusory allegation – made here on information and belief – does not meet FRCP Rule 9 standards for fraud-based claims.

Third, VP fails to allege facts sufficient to state a claim under the "unlawful," "fraudulent," and "unfair" prongs of the UCL. Each of the three prongs has specific elements and limitations that the amended complaint does not address.

Not only is the amended complaint defective, but VP will also be unable to explain how it will cure the defects. This lawsuit should be dismissed without leave to amend.

## II.
## CASE HISTORY AND STATEMENT OF ALLEGED FACTS[1]

In its original complaint, VP alleged that it sells 100 octane street legal racing fuel in competition with the Sunoco brand 260GT 100 octane product distributed by General Petroleum. Complaint, Docket No. 2 at ¶¶ 3-4. For reasons unstated, VP decided to test the octane of the Sunoco product and purchased

---

[1] The information stated below reflects the allegations of VP's complaints and, though disputed, are assumed true for purposes of this motion only.

4
MOTION TO DISMISS FIRST AMENDED COMPLAINT

190012

samples from several California retailers. *Id*. at ¶ 9. Subsequent testing of those retail samples showed the fuel had only 97 octane or less. *Id*. at ¶¶ 10-12.

General Petroleum is not the alleged manufacturer of the mislabeled fuel or the alleged owner or operator of any of the retail sites that sold the mislabeled fuel. General Petroleum was the fuel distributor, and VP alleges that General Petroleum engaged in false advertising and consumer fraud in connection with the fuel distribution. This allegedly had the effect of driving down VP's sales. *Id*. at ¶ 31.

General Petroleum moved to dismiss the original complaint on the ground that it was preempted by the PMPA. Docket No. 7. General Petroleum explained that the PMPA permitted it to distribute Sunoco racing fuel in reliance on Sunoco's octane certification, and in fact, this is what General Petroleum did.[2] The motion was granted in part. Docket No. 13. The Court recognized that the PMPA would preempt any claim arising from General Petroleum's certification of octane rating to California retailers – even if those ratings were erroneous – because "the PMPA allow[s] the distributor to rely on the certification it received from the supplier." Docket No. 13 at 19, citing 15 U.S.C. § 2822. But there would be no preemption of claims premised on false advertising of the misstated octane rating by General Petroleum: "The PMPA does not regulate the act of advertising petroleum products." *Id*. at 16.

Guided by the Court's analysis, VP filed an amended complaint that contained the same core allegations, but focused on purported advertising violations under California's Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code, § 17200) and False Advertising Law ("FAL," Cal. Bus. & Prof. Code, § 17500.). Docket No. 17. The amended complaint alleges the existence of ten retail dealers in California that sold 97 octane fuel as having 100 octane. *Id*. at ¶¶

---

[2] General Petroleum submitted a declaration to establish its reliance on Sunoco's certification under the PMPA. Docket No. 7-3 (Declaration Of Boris Gurarie). There was no objection to the Court's consideration of this declaration, and to the extent this issue remains, we ask that the declaration again be considered by the Court.

5
MOTION TO DISMISS FIRST AMENDED COMPLAINT

10, 12. These dealers used point-of-sale placards, signage, and displays – the "Advertising Statements" – to erroneously state the availability of 100 octane racing fuel. *Id*. at ¶ 11. But missing from the amended complaint, however, are allegations of fact suggesting that General Petroleum had any responsibility for the Advertising Statements. VP merely alleges in conclusory fashion, and on information and belief, that: "GP exercises or is charged with substantial control over the method and manner of how Sunoco-branded products are labeled, signed, displayed, advertised and marketed at retail locations in California, including the locations underlying this suit . . . ." *Id*. at ¶ 5, 16.

In any event, VP contends that consumers have relied upon and been harmed by the purchase of the falsely advertised 97 octane fuel. *Id*. at ¶ 31. "[T]his has resulted in competitive harm and has unfairly diverted sales to Defendants." *Id*.

## III.
## THE COMPLAINT SHOULD BE DISMISSED

### A. Legal Standards

Federal Rule 12(b)(6) requires dismissal where there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must dismiss a claim if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In ruling on a Rule 12(b)(6) motion, courts are to accept the plaintiff's allegations as true, but need not accept conclusory allegations or unwarranted inferences. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *id*., and to "state a claim to relief that is

plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949-50 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

In addition, when an action sounds in fraud, the facts underlying the complaint must be pleaded with specificity. Fed. R. Civ. Proc. 9(b) ("the circumstances constituting fraud or mistake shall be stated with particularity.") Rule 9b applies to claims that include allegations of fraud, and not just claims styled as "fraud" claims. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103-1104 (9th Cir. 2003); *see also Borselino v. Goldman Sachs Group, Inc*., 477 F.3d 502, 507 (7th Cir. 2007). In pleading fraud-based claims, the "complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see also*, *Ackerman v. Northwestern Mut. Life Ins. Co*., 172 F.3d 467, 469 (7th Cir. 1999) (Rule 9 requires "the who, what, where, and when of the alleged fraud . . . ."; *Williams v. WMX Technologies, Inc*., 112 F.3d 175, 178 (5th Cir. 1997) (in fraud cases, "the who, what, when, and where must be laid out before access to the discovery process is granted.") Allegations that are vague or conclusory are insufficient to satisfy the "particularity" required by Rule 9b. *Moore v. Kayport Package Express, Inc*., 885 F2d 531, 540 (9th Cir. 1989).

VP is alleging violations of the UCL and FAL. This Court previously ruled that those "state law claims are 'grounded in fraud' and thus must be pleaded with particularity." Docket No. 13 at 23. Rule 9's particularity requirement should likewise govern the amended complaint.

*///*

*///*

7
MOTION TO DISMISS FIRST AMENDED COMPLAINT
190012

## A. The Complaint Fails To Allege VP's Standing To Assert A UCL Or FAL Claim

This Court has authored a detailed opinion on the UCL's requirement of standing. *See Walker v. USAA Cas. Ins. Co.*, 474 F.Supp.2d 1168 (E.D. Cal. 2007), *aff'd*, 558 F.3d 1025 (9th Cir. 2009). Briefly stated, to maintain a claim under the UCL, the plaintiff must show that it has "suffered injury in fact and has lost money or property as a result of unfair competition." Cal. Bus. & Prof.Code § 17204. The FAL has the same requirement. *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798, 819 (2007) (Business & Professions Code section 17535 "permits an individual to assert a claim under the FAL only if he or she 'has suffered injury in fact and has lost money or property as a result of such unfair competition' . . . .)"

A plaintiff suffers a "loss of money" when it had "prior possession or a vested legal interest in the money or property allegedly lost" to the defendant because of its unfair competition or advertising. *Walker,* 474 F.Supp.2d at 1172 ("Accordingly, to have standing to assert any UCL claim, Plaintiff must show either prior possession or a vested legal interest in the money or property allegedly lost.") "[T]he import of the requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution." *Buckland*, 155 Cal.App.4th at 817.

The amended complaint implies that consumers purchased 97 octane racing fuel at California retailers in reliance on advertisements stating the fuel would have 100 octane. Those consumers would have standing under the UCL and FAL to recover restitution – the amount they paid for the misbranded fuel. VP, on the other hand, alleges its loss of money is "diverted sales" away from its own product. Docket No. 17 at ¶ 31. But VP never had "prior possession or a vested legal interest" in money from these lost sales. Nor has VP alleged that this lost money is, somehow, now in the hands of General Petroleum.

Similar is the recent case *ZL Technologies v. Gartner*, 2009 WL 3706821 (N.D. Cal. Nov. 4, 2009). There, a plaintiff software manufacturer allegedly lost profits when an information technology research company made "false or misleading" statements to potential customers. The plaintiff's UCL claim was dismissed without leave to amend. *Id*. at *13, n. 7. It had failed to allege that the defendant was in possession of the "lost" profits, or that it (not a third party) had relied on the false statements. *Id*. at *10-11.

VP's amended complaint suffers from the same defects. Accordingly, VP lacks standing to sue General Petroleum under either the UCL or the FAL. The amended complaint should be dismissed without leave to amend.[3]

## B. The Complaint Fails To Allege A Violation Of The FAL By General Petroleum

Section 17500 of the FAL prohibits the making of any statement, in the course of performing services, that "is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Bus. & Prof. Code § 17500; *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 950 (2003). VP alleges false and misleading advertising by General Petroleum. It points to point-of-sale placards, signage, and displays that stated, incorrectly, that the retailers were selling 100 octane racing fuel.

It can be assumed true for this motion that California retailers used "100 octane" advertising on their premises to sell 97 octane fuel. But what the amended complaint fails to allege, and what cannot be assumed true, is that General

---

[3] VP might suggest it can amend the complaint to allege "lost money" in connection with its purchase of the fuel samples it had tested. But the retailers – not General Petroleum – possess that money. Additionally, when a plaintiff purchases a product to facilitate litigation, that purchase does not constitute the requisite injury in fact for UCL or FAL standing. *Buckland,* 155 Cal.App.4th at 816 ("Buckland purchased the product to establish standing for litigation against Threshold. Although she indicated she also bought it to investigate claims against Threshold, she has not identified any investigation expenses other than the cost of the product. Because the costs were incurred solely to facilitate her litigation, her purchase does not constitute the requisite injury in fact; to hold otherwise would gut the injury in fact requirement.")

9
MOTION TO DISMISS FIRST AMENDED COMPLAINT

Petroleum had anything to do with this advertising.  VP's allegations on this point are sparse and conclusory – the amended complaint vaguely states, without details or examples, that General Petroleum exercised "substantial control" over "the method and manner" of the advertising.  It is unclear what this means.  It is also well short of what Rule 9 requires.  The amended complaint does not allege who at General Petroleum exercised "substantial control" over point-of-sale advertising, or how and when the control was exercised (was there a contract?).

If VP had good faith grounds to believe that General Petroleum provided the advertising materials to the retailers, or mandated a display of erroneous octane information, VP could have easily and expressly made such allegations.  But VP did not do so.  Indeed, nothing in the amended complaint suggests that General Petroleum had any responsibility for the *content* of the point-of-sale advertising.

VP will argue that it can ignore the specificity requirements of Rule 9 because it made its fraud allegations on "information and belief."  In the Ninth Circuit, "Rule 9(b) may be relaxed to permit discovery in a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession."  *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001).  "However, this exception does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief."  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

There are three reasons that VP Racing is not entitled to invoke this exception to Rule 9(b).  First, this case is not part of a "limited class of corporate fraud cases."  *U.S. ex rel. Lee,* 245 F.3d at 1052.  Instead, it presents a rather straightforward claim of false advertising.  Second, the factual information missing from the complaint is not within General Petroleum's "exclusive possession."  *Id*. The circumstances by which GP allegedly directed false advertising by the retailers would also be known to the retailers.  Plaintiffs are capable of obtaining this information and providing the details in their complaint.  Third, VP has failed to

"state the factual basis for the belief" that General Petroleum directed false fuel octane ratings by the retailers. *Neubronner*, 6 F.3d at 672 (rejecting allegations of fraud based on "suspicious circumstances"). The amended complaint contains no explanation for the fraudulent advertising claims beyond the bare allegation that VP Racing has "information and belief" that General Petroleum must have done something wrong.

Rule 9(b) serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *In re Stac Elec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.1996). The dismissal of VP's amended complaint would be consistent with these policies. It is evident that VP is simply suing General Petroleum for "unknown wrongs," hoping that through discovery, it will find some reason to blame its competitor for octane mislabeling that, under the PMPA, is solely the responsibility of Sunoco. That VP has chosen to sue a competitor, and not Sunoco or the retailers that displayed signage for Sunoco fuel, is disingenuous and brings into question VP's motives.

### C.  The Complaint Fails To Allege A Violation Of The UCL By General Petroleum

The UCL imposes liability for unfair competition, defined as "any unlawful, unfair, or fraudulent business acts or practice and unfair, deceptive, untrue or misleading advertising [under the FAL] . . . ." Bus. & Prof. Code § 17200. "Unlawful" conduct, "fraudulent" conduct, and "unfair" conduct are often referred to as the three primary prongs of the UCL. *See, e.g.*, *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal.App.4th 508, 515 (2002). VP asserts a claim for relief under each of these three prongs and for misleading advertising under the

FAL. Docket No. 17 at ¶ 20. However, the amended complaint fails to state a claim for relief under any UCL theory.

### 1) Insufficient Allegations Of "Unlawful" Conduct

With respect to the *unlawful* prong, any state, federal or local law can serve as the predicate for a UCL action. *Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647 (1996). However, the complaint must allege the "particular section of the statutory scheme which was violated" and "state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California*, 14 Cal.App.4th 612, 619 (1993) (sustaining demurrer to UCL cause of action.)

Here, the amended complaint fails to identify any state, federal or local law allegedly violated by General Petroleum. VP's claim under the unlawful prong should therefore be dismissed.

### 2) Insufficient Allegations Of "Fraudulent" Conduct

The *fraud* prong is unlike common law fraud. *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1167 (2000). A plaintiff must show that "members of the public are likely to be deceived." *Id.*, citations omitted; *see also South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.App.4th 861, 878 (1999) (UCL action under fraud prong requires evidence that the business practice was likely to deceive the "consumer to whom the practice was directed.")

Importantly, a UCL claim under the fraud prong may only be brought by a deceived or defrauded consumer. Where the plaintiff has not relied upon the fraudulent statement, it cannot proceed under the UCL. *See ZL Technologies,* 2009 WL 3706821 at *11 ("ZL fails to cite any case law holding that a plaintiff that itself did not actually rely upon the alleged misrepresentations is entitled to relief under these statutes.")

### 3) Insufficient Allegations Of "Unfair" Conduct

In UCL actions between competitors, the parameters of a claim under the *unfair* prong have been described by the California Supreme Court in *Cel-Tech Communications v. Los Angeles Telephone*, 20 Cal.4th 163, 185 (1999). *Cel-Tech* involved an alleged violation of the California Unfair Practices Act ("UPA"), which prohibits below-cost sales and loss leaders intended to destroy competition. When that claim failed (due to the lack of evidence that the defendant acted with an improper purpose), the plaintiff sought relief under the UCL, arguing that the defendant's practices, if not unlawful, were simply "unfair." The Court began its analysis of that argument with a review of the UCL's scope:

> Although the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a "safe harbor," plaintiffs may not use the general unfair competition law to assault that harbor.

*Id*. at 182.

Even in the absence of an applicable safe harbor, the Court limited the concept of "unfair" conduct: "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id*. at 187.

*Cel-Tech* bars VP's amended complaint. Not only does the PMPA provide General Petroleum with a safe harbor, but VP has also failed to allege conduct related to a violation of an antitrust law.

### a) The PMPA Safe Harbor

This Court previously ruled that the PMPA does not preempt state law claims for false advertising. This is because the PMPA does not expressly address fuel advertising, and there is a presumption against preemption unless it is clear from the statute. Docket No. 13 at 7.

Unlike preemption, however, the "safe harbor" doctrine is broad and flexible, and there is no presumption against its application. An action under the UCL will be barred as long as there is another legal provision that "clearly permit[s] the conduct." *Cel-Tech*, 20 Cal.4th at 183. If "the Legislature considered certain activity in certain circumstances and determined it to be lawful, courts may not override that determination under the guise of the unfair competition law." *Id.* Conduct falling within the UCL's safe harbor is also protected from an action under the FAL. *See, McCann v. Lucky Money, Inc.*, 129 Cal.App.4th 1382, 1399 (2005).

The PMPA states that fuel distributors like General Petroleum can rely upon octane certifications provided them by refiners. This rule reflects a determination by Congress that it is neither fair nor efficient to force distributors to retest fuel for octane before it is resold to retailers. How, then, can it be "unfair" for that same distributor to "advertise" a product's octane in reliance on the refiner's certification?

Given the UCL's equitable nature, this Court should rule – as a matter of law – that republishing a refiner's octane certification does not constitute "unfair" conduct.

### b) The Absence of Antitrust Violations

Under *Cel-Tech,* VP's claim for unfair competition depends on allegations showing that General Petroleum threatened an incipient violation of an antitrust law, or violated the policy or spirit of one of those laws. Where such allegations

are absent, the UCL claim should be dismissed. *Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services*, 138 Cal.App.4th 1215, 1225 (2006) (UCL action between licensed real estate brokers is dismissed because "[t]he first amended complaint alleges no conduct even remotely approaching a violation of an antitrust law or the policy or spirit of antitrust laws."); *Girafa.Com v. Alexa Internet*, 2008 WL 4500858 *2 (N.D.Cal. Oct. 6, 2008) ("Girafa has not alleged 'an incipient violation of the antitrust law' that would support a section 17200 claim. . . . To be sure, Alexa's conduct threatens its competitor Girafa, but that is not the same as threatening competition."); *Sybersound Records, Inc. v. UAV Corporation*, 517 F.3d 1137, 1153 (1999) (where a karaoke record producer and music publishing companies sued other karaoke record producers for selling unlicensed music, UCL claim is dismissed because "Sybersound has also not pled an act that would be an incipient violation of antitrust law, as required under *Cel-Tech* for claims against competitors.")

The crux of VP's lawsuit is fraudulent advertising, and no antitrust violations by General Petroleum are alleged. Under long established UCL principles, therefore, VP has no viable claim for "unfair" competition.

## IV.
## CONCLUSION

VP's lawsuit makes little "equitable" sense. Sunoco allegedly refined and sold racing fuel with an erroneous octane rating, but Sunoco has not been sued. The California retailers used Sunoco's octane information on point-of-sale signage and profited from sales to consumers, but like Sunoco, are not involved. Only General Petroleum – a competitor of VP that merely distributed the fuel in California for Sunoco – is targeted.

VP lacks standing to sue General Petroleum, however. General Petroleum is not in possession of any money in which VP has a vested interest, and VP did not

rely upon anything General Petroleum did or said. The amended complaint also fails to allege facts showing any advertising by General Petroleum. General Petroleum's conduct was, at all times, consistent with the PMPA. Accordingly, the amended complaint should be dismissed without leave to amend.

Dated: February 16, 2010            STEPTOE & JOHNSON LLP

By /s/ Jason Levin
Jason Levin, CA Bar No. 161807
*jlevin@steptoe.com*
Lawrence P. Riff, CA Bar No. 104826
*lriff@steptoe.com*
633 W. Fifth Street, Suite 700
Los Angeles, California 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

Attorneys for Defendant
General Petroleum Corporation